District Court Case No. 2:18-cv-10188-AG

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT, SANTA ANA DIVISION

IN RE: STEVEN MARK ROSENBERG,
*Debtor.*

STEVEN MARK ROSENBERG
*Appellant,*

vs.

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ALLIANCE BANCORP, MORTGAGE BACKED CERTIFICATE SERIES 2007-OA1, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., OCWEN LOAN SERVICING, LLC,
*Appellees.*

Appeal from the U.S. Bankruptcy Court, Central District of California, Case No. Case No. 1:17-bk-11748-VK, A.P. Case No. 1:17-ap-01096-vk, Hon. Victoria S. Kaufman,
**Hon. Andrew J. Guilford, District Court Judge**

**APPELLEE'S SUPPLEMENTAL APPENDIX**
VOLUME 2 OF 3

Zi C. Lin, SBN 236989
Motunrayo D. Akinmurele, SBN299868
Garrett & Tully, P.C.
225 S. Lake Avenue, Suite 1400
Pasadena, CA 91101-4869
Tel: (626) 577-9500/Fax: (626) 577-0813
E-mails: zlin@garrett-tully.com, mdakinmurele@garrett-tully.com
***Attorneys for Appellee***
**Deutsche Bank National Trust Company, As Trustee for Alliance Bancorp Mortgage Backed Certificate Series 2007-OA1**

# TABLE OF CONTENTS

**VOLUME 1 OF 3**
Relevant Entries in Bankruptcy Docket....................................1

Notice of Ruling Regarding August 19, 2014 Hearing on
Respondents' Motion for Terminating Sanctions.....................14

Adversary Proceeding Complaint..........................................18

Memorandum of Points and Authorities In Support of Defendants'
Motion for Judgment on the Pleadings...................................93

**VOLUME 2 OF 3**
Request for Judicial Notice in Support of Defendants' Motion for
Judgment on the Pleadings................................................118

Notice of Defendant Deutsche Bank National Trust Company, as
Trustee for Alliance Bancorp Mortgage Backed Pass-Through
Certificate Series 2007-OA1 of Joinder in Motion for Judgment on
the Pleadings By Defendants Ocwen Loan Servicing, LLC and
Mortgage Electronic Registrations Systems, Inc. ...................219

Memorandum of Points and Authorities in Support of Opposition
to Defendants' Motion for Judgment on the Pleadings............224

**VOLUME 3 OF 3**
Defendants' Reply Brief In Support of Motion for Judgment on the
Pleadings...................................................................268

Joinder of Defendant Deutsche Bank National Trust Company, as
Trustee for Alliance Bancorp Mortgage Backed Pass-Through
Certificate Series 2007-OA1 in Reply Brief in Support of Motion
for Judgment on the Pleadings By Defendants Ocwen Loan
Servicing, LLC and Mortgage Electronic Registrations Systems,
Inc...........................................................................277

Order Granting Defendants' Motion for Judgment on the Pleadings.................................................................284

Notice of Lodgment of Order or Judgment in Adversary Proceeding Re: Motion for Judgment on the Pleadings...........297

Judgment Following Defendants' Motion for Judgment on the Pleadings.................................................................300

Amended Order Granting Defendants' Motion for Judgment on the Pleadings.................................................................302

Amended Judgment Following Defendants' Motion for Judgment on the Pleadings...........................................................320

Notice of Motion and Motion to Alter or Amend Judgment; Memorandum of Points and Authorities...............................324

Plaintiff's Declaration In Support of Plaintiff's Motion to Alter or Amend Judgment.................................................340

Transcript of May 2, 2018 Proceeding...................................346

Notice of Appeal.................................................................361

Order Dismissing Action for Lack of Prosecution for Failure to Comply with the Court's Order............................................363

Order Re: Plaintiff's Motion to Alter or Amend Judgment.........364

**WRIGHT, FINLAY & ZAK, LLP**
T. Robert Finlay, Esq., SBN 167280
Nicole S. Dunn, Esq., SBN 213550
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050; Facsimile: (949) 608-9142

Attorneys for Defendants, Ocwen Loan Servicing, LLC;
and Mortgage Electronic Registration Systems, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: STEVEN MARK ROSENBERG, Debtor. | Bankruptcy Case No. 1:17-bk-11748-VK Chapter 7 |
| | Adversary Case No. 1:17-ap-01096-VK |
| STEVEN MARK ROSENBERG, <br><br> Plaintiff, <br><br> v. <br><br> ALLIANCE BANCORP, INC (Estate), MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., OCWEN LOAN SERVICING, ONE WEST BANK, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ALLIANCE BANCORP MORTGAGE BACKED PASS-THROUGH CERTIFICATE SERIES 2007-OA1 AND DOES 1 THROUGH 25, INCLUSIVE, <br><br> Defendants. | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Hearing: <br> Date:  TBD <br> Time:  TBD <br> Crtrm:  301 <br><br> [*Filed concurrently with Notice of Motion, Motion for Judgment on the Pleadings*] |

1

118

1  **TO THIS HONORABLE COURT AND TO ALL PARTIES AND**

2  **THEIR ATTORNEYS OF RECORD:**

3      Defendants Ocwen Loan Servicing, LLC ("Ocwen"), and Mortgage

4  Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants")

5  respectfully requests that the court take judicial notice of the following documents

6  in support of its Motion for Judgment on the Pleadings filed concurrently herewith:

7      1.    The Deed of Trust recorded on March 15, 2007, as Document No.

8  20070575007 in the Official Records of the Los Angeles County Recorder's

9  Office, a true and correct copy of which is attached hereto as Exhibit 1.

10      2.    The Affidavit of Death of Trustee recorded on December 1, 2008, as

11  Document No. 20082107890 in the Official Records of the Los Angeles County

12  Recorder's Office a true and correct copy of which is attached hereto as Exhibit 2.

13      3.    The Notice of Default and Election to Sell under Deed of Trust

14  recorded on April 17, 2008, as Document No. 20080669043 in the Official

15  Records of the Los Angeles County Recorder's Office, a true and correct copy of

16  which is attached hereto as Exhibit 3.

17      4.    The Quitclaim Deed recorded on December 2, 2008, as Document No.

18  20082117184 in the Official Records of the Los Angeles County Recorder's

19  Office, a true and correct copy of which is attached hereto as Exhibit 4.

20      5.    The Assignment of Deed of Trust recorded on August 12, 2008, as

21  Document No. 20081445795 in the Official Records of the Los Angeles County

22  Recorder's Office, a true and correct copy of which is attached hereto as Exhibit 5.

23      6.    The Assignment of Deed of Trust recorded on February 24, 2010, as

24  Document No. 20100248050 in the Official Records of the Los Angeles County

25  Recorder's Office, a true and correct copy of which is attached hereto as Exhibit 6.

26      7.    The Notice of Default and Election to Sell under Deed of Trust

27  recorded on November 3, 2015, as Document No. 20151344164 in the Official

28

2

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

1    Records of the Los Angeles County Recorder's Office, a true and correct copy of
2    which is attached hereto as Exhibit 7.

3            8.      The Notice of Rescission of Notice of Default recorded on November
4    9, 2015, as Document No. 20151367519 in the Official Records of the Los
5    Angeles County Recorder's Office, a true and correct copy of which is attached
6    hereto as Exhibit 8.

7            9.      The Corporate Assignment of Deed of Trust recorded on March 21,
8    2017, as Document No. 20170317787 in the Official Records of the Los Angeles
9    County Recorder's Office, a true and correct copy of which is attached hereto as
10   Exhibit 9.

11           10.     The Notice of Trustee's Sale recorded on May 18, 2017, as Document
12   No. 20170554108 in the Official Records of the Los Angeles County Recorder's
13   Office, a true and correct copy of which is attached hereto as Exhibit 10.

14           11.     The Corporate Assignment of Deed of Trust recorded on December
15   14, 2017, as Document No. 20171454376 in the Official Records of the Los
16   Angeles County Recorder's Office, a true and correct copy of which is attached
17   hereto as Exhibit 11.

18           12.     Probate Code Section 850 Petition to Determine Title to Real Property
19   to Estate filed on August 27, 2009 in *The Matter of Estate of Isadore Rosenberg,*
20   *Deceased* Los Angeles County Superior Court Case No. BP109162, a true and
21   correct copy of which is attached hereto as Exhibit 12.

22           13.     Notice of Order Dismissing Action with Prejudice filed on January
23   20, 2015 in *The Matter of Estate of Isadore Rosenberg, Deceased* Los Angeles
24   County Superior Court Case No. BP109162, a true and correct copy of which is
25   attached hereto as Exhibit 13.

26           14.     Remittitur, with Order Modifying Opinion, No Change in Judgment
27   filed on January 10, 2017 in *The Matter of Estate of Isadore Rosenberg, Deceased*
28

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

1  Los Angeles County Superior Court Case No. BP109162, a true and correct copy

2  of which is attached hereto as Exhibit 14.

3

4                                             Respectfully submitted,

5                                             WRIGHT, FINLAY & ZAK, LLP

6

7  Dated: February 13, 2018          By:    /s/ Nicole S. Dunn
                                              T. Robert Finlay, Esq.
8                                             Nicole S. Dunn, Esq.
                                              Attorneys for Defendants, Ocwen Loan
9                                             Servicing, LLC; and Mortgage Electronic
                                              Registration Systems, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

121

## PROOF OF SERVICE

I, Jovete Elguira, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 200, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

On February 13, 2018, I served the within **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** on all interested parties in this action as follows:

[X]   by placing [] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**[SEE ATTACHED SERVICE LIST]**

[X]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]   (BY FEDERAL EXPRESS OVERNIGHT- NEXT DAY DELIVERY) I placed true and correct copies thereof enclosed in a package designated by Federal Express Overnight with the delivery fees provided for.

[X]   (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(b)(2)(E). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(b)(2)(E). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

[X]   (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 13, 2018, at Newport Beach, California.

Jovete Elguira

1

PROOF OF SERVICE

**ATTACHED SERVICE LIST**

Steven Mark Rosenberg
15814 Septo Street
North Hills, CA  91343
*Plaintiff Pro Se*

Kristin Webb, Esq.
**BRYAN CAVE LLP**
3161 Michelson Drive, Suite 1500
Irvine, CA  92612
(949) 223-7000; FAX (949) 223-7100
webbk@bryancave.com
*Attorney for Cit Bank, N.A.*

Amy L. Goldman (**TR**)
633 W. 5th Street, Suite 4000
Los Angeles, CA  90071
(213) 250-1800
*Trustee*

United States Trustee (SV)
915 Wilshire Blvd., Suite 1850
Los Angeles, CA  90017
(213) 894-6811
*U.S. Trustee*

Judge Victoria S. Kaufman
U.S. Bankruptcy Court – Central District
(San Fernando Valley)
21041 Burbank Blvd.
Woodland Hills, CA  91367-6603

2

PROOF OF SERVICE

123

FIDELITY-VAN NUYS

Recording Requested By:
AMPRO MORTGAGE, A DIVISION OF
UNITED FINANCIAL MORTGAGE CORP.

03/15/07

**20070575007**

And After Recording Return To:
ALLIANCE BANCORP, C/O
NATIONWIDE TITLE CLEARING, INC.
ATTN: FINAL DOCS UNIT
2100 ALT 19 NORTH
PALM HARBOR, FLORIDA 34683
Loan Number: 1080101956

1950711-JO

269-2515                    [Space Above This Line For Recording Data]

# DEED OF TRUST

MIN: 100039307020288900

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  MARCH 1, 2007      , together
with all Riders to this document.
(B)  "Borrower" is  ISADORE ROSENBERG, A WIDOWER

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is  AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL
MORTGAGE CORP.
Lender is a   ILLINOIS CORPORATION                                    organized
and existing under the laws of  ILLINOIS
Lender's address is   2133 WEST PEORIA AVENUE, SUITE 130, PHOENIX,
ARIZONA 85029-2370

(D)  "Trustee" is  FIDELITY NATIONAL TITLE COMPANY
6060 SEPULVEDA BOULEVARD, SUITE 100, VAN NUYS, CALIFORNIA 91411

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security
Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note" means the promissory note signed by Borrower and dated  MARCH 1, 2007              .
The Note states that Borrower owes Lender  THREE HUNDRED NINETY THOUSAND AND
00/100                              Dollars (U.S. $  390,000.00        ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic ⚡ℱℴ𝓇𝓂𝓈 800-649-1362
Form 3005 01/01 (02/01/07)                           Page 1 of 14                                    www.docmagic.com

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
APRIL 1, 2037 .

(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.

(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify] |

ADJUSTABLE  RATE  BALLOON  RIDER

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                                        Page 2 of 14

DocMagic 𝘦𝘍𝘰𝘳𝘮𝘴 800-649-1362
www.docmagic.com

LOS ANGELES,CA                                   Page 2 of 21                         Printed on 12/27/2017 3:21:59 PM
Document: TD 2007.575007

Branch :F71,User :TZ03
Case 1:17-ap-01096-VK    Doc 17-1    Filed 02/13/18    Entered 02/13/18 09:52:54    Desc
Exhibit Exhibits 1-14    Page 4 of 96
Station Id :FAIB

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY          of          LOS ANGELES          :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 2669-025-015

which currently has the address of  15814 SEPTO STREET
                                                    [Street]

NORTH HILLS AREA                    , California     91343     ("Property Address"):
        [City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)          Page 3 of 14
DocMagic ☎Forms 800-649-1362
www.docmagic.com

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   Application of Payments or Proceeds.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   Funds for Escrow Items.  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Branch :F71,User :1Z03                              Comment:                              Station Id :FAIB

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying
the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make
such a charge.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds,
Lender shall not be required to pay Borrower any interest or earnings on the Funds.  Borrower and Lender can agree
in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an
annual accounting of the Funds as required by RESPA.

   If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for
the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA,
Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make
up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of
Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower
shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than
12 monthly payments.

   Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower
any Funds held by Lender.

   4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to
the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the
Property, if any, and Community Association Dues, Fees, and Assessments, if any.  To the extent that these items
are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:
(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only
so long as Borrower is performing such agreement;  (b) contests the lien in good faith by, or defends against
enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien
while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder
of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender
determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument,
Lender may give Borrower a notice identifying the lien.  Within 10 days of the date on which that notice is given,
Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

   Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service
used by Lender in connection with this Loan.

   5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the
Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards
including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be
maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender
requires pursuant to the preceding sentences can change during the term of the Loan.  The insurance carrier providing
the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall
not be exercised unreasonably.  Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-
time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone
determination and certification services and subsequent charges each time remappings or similar changes occur which
reasonably might affect such determination or certification.  Borrower shall also be responsible for the payment of
any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone
determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at
Lender's option and Borrower's expense.  Lender is under no obligation to purchase any particular type or amount
of coverage.  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's
equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater
or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so
obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed
by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument.  These
amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest,
upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic eForms 800-649-1362
Form 3005 01/01 (02/01/07)                      Page 5 of 14                                    www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                    Page 6 of 14                    DocMagic ⟨⟩ 800-649-1362
www.docmagic.com

Branch :FYI,User :TZ03                                                                                    Station Id :FAIB

8.   **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease.  Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)                    Page 7 of 14

DocMagic *Magic* 800-649-1362
www.docmagic.com

LOS ANGELES,CA                          Page 7 of 21                          Printed on 12/27/2017 3:22:00 PM
Document: TD 2007.575007

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01 (02/01/07)
Page 8 of 14

DocMagic *EFerms*  800-649-1362
www.docmagic.com

LOS ANGELES,CA
Document: TD 2007.575007

Page 8 of 21

Printed on 12/27/2017 3:22:00 PM

Branch :F7I,User :TZ05                                                                              Station Id :FAIB

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** - MERS         DocMagic *e*f*forms* 800-649-1362
Form 3005 01/01 (02/01/07)                              Page 9 of 14                                  www.docmagic.com

otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic &#8482; 800-649-1362
Form 3005 01/01 (02/01/07)          Page 10 of 14          www.docmagic.com

07
057500?

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic ⓔⓕⓞⓡⓜⓢ 800-649-1362
Form 3005 01/01 (02/01/07)                          Page 11 of 14                                    www.docmagic.com

Branch :F7I,User :TZ05                                                                 Station Id :FAIB

required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

07 857 5007

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eForms 800-649-1362
Form 3005 01/01 (02/01/07)                              Page 12 of 14                          www.docmagic.com

LOS ANGELES,CA                              Page 12 of 21                Printed on 12/27/2017 3:22:00 PM
Document: TD 2007.575007

)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
ISADORE ROSENBERG            -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                      -Borrower

Witness:                                          Witness:

_____                  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *DocMagic* 800-649-1362
Form 3005 01/01 (02/01/07)                    Page 13 of 14                            www.docmagic.com

LOS ANGELES,CA                          Page 13 of 21                    Printed on 12/27/2017 3:22:00 PM
Document: TD 2007.575007

———————— [Space Below This Line For Acknowledgment] ————————

State of California

County of LOS ANGELES

On MAR 5, 2007 before me, R. D. SALAZAR, NOTARY Public

personally appeared ISADORE ROSENBERG

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

R. D. SALAZAR
Commission # 1465444
Notary Public - California
Los Angeles County
My Comm. Expires Feb 4, 2008

NOTARY SIGNATURE

R. D. SALAZAR
(Typed Name of Notary)

NOTARY SEAL

07 0575007

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic 800-649-1362
Form 3005 01/01 (02/01/07)                    Page 14 of 14                                    www.docmagic.com

LOS ANGELES,CA                          Page 14 of 21                  Printed on 12/27/2017 3:22:01 PM
Document: TD 2007.575007

137

)

Loan Number:   1080101956

Date:   MARCH 1, 2007

Property Address:   15814 SEPTO STREET, NORTH HILLS AREA, CALIFORNIA
91343

## EXHIBIT "A"

### LEGAL DESCRIPTION

Lot 15 of Tract No. 16376, in the City of Los Angeles, County of Los Angeles, State of
California, as per map recorded in Book 507 Pages 5 and 6 of Maps, in the office of the
County Recorder of said county.

Except therefrom all oils and minerals in and under said land, but without the right of entry
to the surface or subsurface of said land, to a depth of 500 feet, as reserved by
Raven-Spiegel Construction Co., a Corporation, in Book 50683 Page 227, Official Records.

A.P.N. # : 2669-025-015

DocMagic €Ψεπως 800-649-1362
www.docmagic.com

MIN: 100039307020288900          Loan Number: 1080101956

## ADJUSTABLE RATE BALLOON RIDER
### (MTA - TWELVE MONTH AVERAGE INDEX - PAYMENT CAPS)

THIS ADJUSTABLE RATE RIDER is made this   1st   day of   MARCH
2007          , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to   AMPRO MORTGAGE, A
DIVISION OF UNITED FINANCIAL MORTGAGE CORP., AN ILLINOIS CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
    15814 SEPTO STREET, NORTH HILLS AREA, CALIFORNIA 91343

[Property Address]

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE.   UNLESS YOU MAKE
VOLUNTARY PREPAYMENTS, THERE MAY BE NEGATIVE AMORTIZATION
DURING THE LIFE OF THE LOAN. AS SUCH, THE PRINCIPAL AMOUNT YOU
WILL BE REQUIRED TO REPAY COULD BE GREATER THAN THE AMOUNT YOU
ORIGINALLY BORROWED. THE INTEREST RATE CAN NEVER EXCEED THE
LIMIT STATED IN THIS NOTE.

THIS LOAN IS PAYABLE IN FULL AT MATURITY.   YOU MUST REPAY THE
ENTIRE PRINCIPAL BALANCE OF THE NOTE AND UNPAID INTEREST THEN
DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT
THE TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT
OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A
LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH,
WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT
MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COST
NORMALLY ASSOCIATED WITH A NEW LOAN, EVEN IF YOU OBTAIN
REFINANCING FROM, THE SAME LENDER.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

1.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
      The Note provides for changes in the interest rate and monthly payments as follows:

2.    INTEREST
      (A) Interest Rate
      Interest will be charged on unpaid Principal beginning on the   1st   day of APRIL
      2007                         , and continuing until the full amount of Principal has been paid.

ADJUSTABLE RATE BALLOON RIDER                              DocMagic eForms  800-649-1362
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)                      www.docmagic.com
06/21/06                                        Page 1 of 6

Interest will initially be charged at a yearly rate of      8.375 %. The interest rate I will be charged may change.

The interest rate required by this Section 2 of this Note is the rate I will be charged both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will be charged may change on the    1st   day of MAY
2007                          , and on that date every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment will be recalculated in accordance with Section 3.

(C) Interest Rate Limit

My interest rate will never be greater than      11.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin (as defined in Section 2(E)).

(D) The Index

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index which will be based upon comparable information. The Note Holder will give me notice of this choice.

(E) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
THREE AND 448/1000                     percentage point(s) (    3.448 %)
("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date.

3.    PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments of any escrow payments Note Holder may require under the Security Instrument on the   1st   day of each month beginning on MAY, 2007

I will make my monthly payments of Principal and/or interest on the   1st   day of each month beginning on   MAY 1, 2007             . I will make these payments every month until I have paid all the Principal and Interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   APRIL 1, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    PO BOX 780, WATERLOO, IOWA
50704-0780

                              or at a different place if required by the Note Holder.

ADJUSTABLE RATE BALLOON RIDER
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)
06/21/06                        Page 2 of 6                    DocMagic *800-649-1362*
                                                              www.docmagic.com

**(B)  Amount of My Initial Monthly Payments**

 Each of my initial monthly payments until the first "Payment Change Date" (as defined in Section 3(C)) will be in the amount of U.S. $ 1,232.95  unless adjusted under Section 3(F) of this Note.  My initial monthly payment is an amount that would be sufficient to repay the original Principal amount I borrowed in full in substantially equal payments over the Amortization Period (defined below) if my yearly rate was 2.250 % instead of my actual yearly interest rate set forth in Section 2(A) of this Note. The "Amortization Period" is the 40 year period beginning on the 1st day of MAY, 2007

**(C)  Payment Change Dates**

 My monthly payment may change as required by Section 3(D) below beginning on the 1st day of MAY, 2008  , and on that date every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with Section 3(D) or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due, which causes the Principal balance to increase rather than decrease.)

 I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

 At least thirty (30) days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full over the remainder of the Amortization Period in substantially equal installments at the interest rate in effect during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless either Section 3(F) or 3(G) below applies, the amount of my new monthly payment effective on a Payment Change Date will not increase by more than 7.5% of my prior Minimum Payment. This 7.5% limitation is called the "Payment Cap."

 The Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Note Holder may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless either Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

 Since my payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my monthly payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full over the remainder of the Amortization Period in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the then current interest rate determined in accordance with Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

ADJUSTABLE RATE BALLOON RIDER          DocMagic &#10112;&#10112;&#10112; 800-649-1362
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)       www.docmagic.com
06/21/06         Page 3 of 6

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to      115.000 % of the Principal amount I originally borrowed.  My unpaid Principal balance could exceed the Maximum Limit (      115.000 % of my original Principal amount) due to Minimum Payments and interest rate increases.  In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment until the next Payment Change Date.  This means that my monthly payment may change more frequently than annually and the payment changes will not be limited by the 7.5% Payment Cap.  The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full over the remainder of the Amortization Period in substantially equal installments at the interest rate in effect during the preceding period.

**(G)  Required Full Payment**

Regardless of the Payment Cap limitation described in Section 3(D), on the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again.  I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me each month with up to four (4) payment Options, three of which may be greater than the Minimum Payment, and all of which are called "Payment Options."  The Payment Options that may be available are:

(1)   **Minimum Payment:** This is the minimum amount Note Holder will accept as my monthly payment.  This amount will be provided by Note Holder after the First Interest Rate Change Date and monthly thereafter.  The Principal balance will not be decreased by this Payment Option.  If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur.  (Negative amortization occurs when the mortgage payment is smaller than the interest due and that causes the Principal balance to increase rather than decrease.)

(2)   **Interest Only Payment:**  This is the amount that would pay only the interest on the Principal at the current interest rate.  The Principal balance will not be decreased by this Payment Option.

(3)   **30 Year Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full at the Maturity Date in substantially equal payments.  This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

(4)   **15 Year Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full within a fifteen (15) year term from the first payment due date in substantially equal payments.  This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

I may use the Payment Options reflected in H.(2) through H.(4) only if they are greater than the Minimum Payment.  If any of these Payment Options results in a payment amount that is less than the Minimum Payment, I must still make the Minimum Payment.

TD 0057 5007

ADJUSTABLE RATE BALLOON RIDER
(MTA - TWELVE MONTH AVERAGE INDEX-  PAYMENT CAPS)
06/21/06                               Page 4 of 6

DocMagic EForms 800-649-1362
www.docmagic.com

LOS ANGELES, CA
Document: TD 2007.575007

Printed on 12/27/2017 3:22:01 PM

**(I) Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me which may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

ADJUSTABLE RATE BALLOON RIDER
(MTA - TWELVE MONTH AVERAGE INDEX.  PAYMENT CAPS)
08/21/06                              Page 5 of 6

DocMagic *eServices* 400 649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
ISADORE  ROSENBERG        -Borrower        -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower        -Borrower

_____ (Seal)        _____ (Seal)
                         -Borrower        -Borrower

*[Sign Original Only]*

ADJUSTABLE RATE BALLOON RIDER
(MTA - TWELVE MONTH AVERAGE INDEX- PAYMENT CAPS)
06/21/06                    Page 6 of 6

DocMagic €Fortsus  800-849-1362
www.docmagic.com

LOS ANGELES,CA                Page 21 of 21            Printed on 12/27/2017 3:22:01 PM
Document: TD 2007.575007

# EXHIBIT 2

This page is part of your document - DO NOT DISCARD



## 20082107890

 Pages: 0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/01/08 AT 02:30PM**

| | |
|---|---|
| FEES: | 13.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 13.00 |

## TITLE(S) : AFFIDAVIT





L E A D S H E E T



200812010060015



001117552

**SEQ:
01**

DAR - Counter (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

LOS ANGELES,CA                    Page 1 of 3              Printed on 12/27/2017 3:21:58 PM
Document: AF 2008.2107890

Recording Requested By:

Steven Mark Rosenberg
When recorded mail document to:

NAME   Steven Mark Rosenberg

ADDRESS   15814 Septó Street

CITY   North Hills
STATE & ZIP   California, 91343

12/01/2008

*20082107890*

_____
Above Space for Recorder's Use Only

## AFFIDAVIT OF DEATH OF TRUSTEE

Assssor's Parcel Number:   2669-025-015

State of California
County of ___Los Angeles___ }

___Steven Mark Rosenberg_____, of legal age, being first duly sworn, deposes and says:

1.  ___Isadora Rosenberg_____, the decedent mentioned in the attached certified
    copy of Certificate of Death, Is the same person named as Trustee in the certain Declaration of
    Trustee Dated ___May 04,1990_____ executed by ___Norma P. Rosenberg_____
    ___and Isadora Rosenberg_____ as trustor(s).

2.  At the time of the decedent's death, decedent was the owner, as Trustee, of certain real property
    acquired by a deed recorded on ___May 08, 1990_____, as instrument No.
    ___90-847083_____, in the Official Records of ___Los Angeles_____County,
    California, covering the following described property situated in the said County, State of California:
    Lot 15 of Tract 16376, as per map recorded in Book 507, pages 5 and 6 of
    maps, in the Office of the County Recorder of said County.

3.  I am the surviving or successor Trustee of the same trust under which said decedent held title as
    trustee pursuant to the deed described above, and am designated and empowered pursuant to the
    terms of said trust to serve as Trustee thereof.

Dated ___December 01,2008___        _Steven Mark Rosenberg_
                                     Steven Mark Rosenberg

SUBSCRIBED AND SWORN TO (or affirmed) before me on this ___1 ST_____ day of
_Dec_ 20_08_ by _Steven Mark Rosenberg_ proved to me on the basis of
satisfactory evidence to be the persons(s) who appeared before me.

                                                    NOTARY SEAL

_D. Patel_
Notary Signature
Notary Public Commissioned for said County and State

OFFICIAL SEAL
DILIP O. PATEL
NOTARY PUBLIC - CALIFORNIA
COMMISSION #1770323
LOS ANGELES COUNTY
My Commission Exp. October 22, 2011



# EXHIBIT 3



This page is part of your document - DO NOT DISCARD



**20080669043**   Pages: 003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

04/17/08 AT 08:00AM

| | |
|---|---|
| Fee: | 12.00 |
| Tax: | 0.00 |
| Other: | 0.00 |
| Total: | 12.00 |

Title Company

TITLE(S) :  _____



L  E  A  D        S  H  E  E  T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

 

LOS ANGELES,CA                    Page 1 of 3              Printed on 12/27/2017 3:22:02 PM
Document: ND 2008.669043

Recording requested by
Quality Loan Service Corp

When recorded mail to
Quality Loan Service Corp
2141 5th Avenue
San Diego, CA 92101



04/17/08

**20080669043**

Space above this line for Recorder's use

TS No : CA-08-153268-DL          Loan No.: 3002689594

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is $5,903.39 as of 4/16/2008 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise, or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Indymac Bank FSB
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

3

TS No.. CA-08-153268-DL
Loan No : 3002B89594
Notice of Default and Election To Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN. That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 3/1/2007, executed by ISADORE ROSENBERG, A WIDOWER, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP., as beneficiary, recorded 3/15/2007, as Instrument No. 20070575007, in Book xxx, Page xxx of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein, as more fully described in said Deed of Trust.

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $390,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned, that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of

Installment of principal and interest plus impounds and / or advances which became due on 1/1/2008 plus amounts that are due or may become due for the following, late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby

Dated: 4/16/2008            Quality Loan Service Corp., AS AGENT FOR BENEFICIARY
                            BY: Fidelity National Title Insurance Company

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

08 0669043

# EXHIBIT 4

Branch :F7I,User :TZ05                        Comment:                                    Station Id :FAIB



**This page is part of your document - DO NOT DISCARD**

 **20082117184**



Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/02/08 AT 12:45PM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |

**TITLE(S) :** DEED



L E A D S H E E T



200812020050032



001119900

**SEQ:
01**

**DAR - Counter (Hard Copy)**



THIS FORM IS NOT TO BE DUPLICATED

LOS ANGELES,CA
Document: D 2008.2117184

Page 1 of 3

Printed on 12/27/2017 3:22:06 PM

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Branch :F7I,User :TZ05      Exhibit Exhibit 1-14   Page 33 of 96                    Station Id :FAIB

Recording requested by: Steven Mark Rosenberg

And when recorded, mail this deed and tax statements
to: Steven Mark Rosenberg
    15814 Septo Street
    North Hills, CA 91343



For recorder's use

## QUITCLAIM DEED

APN: 2669-025-015
This conveyance transfers an
interest into or out of a Living
Trust, R & T 11930

□ This transfer is exempt from the documentary transfer tax.
□ The documentary transfer tax is $ *0*    and is computed on:
    □ the full value of the interest or property conveyed.
    □ the full value less the liens or encumbrances remaining thereon
      at the time of sale.
The property is located in □ an unincorporated area □ the city of
Los Angeles.

For a valuable consideration, receipt of which is hereby acknowledged,
**Steven Mark Rosenberg, Successor Trustee of the Isadore and Norma P. Rosenberg Trust,
Dated May 4, 1990**

hereby quitclaims(s) to **Steven Mark Rosenberg, an unmarried man**

the following real property in the City of   Los Angeles , County of Los Angeles ,
California:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE
A PART HEREOF
Also Known as: 15814 Septo Street, North Hills, CA 91343

Date: December 02, 2008

                                    *Steven Mark Rosenberg*
                                    Steven Mark Rosenberg, Successor Trustee

State of California

County of   *LOS ANGELES*

On  12/2/ , 2008, before me,   *DILIP C. PATEL* Notary Public , personally appeared
*Steven Mark Rosenberg* , who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are  subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I
certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph
is true and correct.
WITNESS my hand and official seal.

*D. Patel*
Signature of Notary

OFFICIAL SEAL
DILIP C. PATEL
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1770323
LOS ANGELES COUNTY
My Commission Exp. October 22, 2011

LOS ANGELES,CA                    Page 2 of 3              Printed on 12/27/2017 3:22:06 PM
Document: D 2008.2117184

Branch :F7I,User :TZ05                                                                                      Station Id :FAIB

3

## EXHITBIT "A"

Lot 15 of Tract No. 16376, in the City of Los Angles, County of Los Angeles, State of
California, as per map recorded in Book 507 Pages 5 and 6 of Maps, in the office of the
County Recorder of said county.

Expect therefrom all oils and minerals in and under said land, but without the right of
entry to the surface or subsurface of said land, to a depth of 500 feet, as reserved by
Raven-Spiegal Construction Co., a Corporation, in book 50683 Page 227, Official
Records.

Assessor's Parcel No: 2669-025-015

# EXHIBIT 5

This page is part of your document - DO NOT DISCARD

 **20081445795** Pages: 002



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/12/08 AT 08:00AM**

| | |
|---|---|
| Fee: | 10.00 |
| Tax: | 0.00 |
| Other: | 0.00 |
| Total: | 10.00 |

Title Company

## TITLE(S) :



L E A D   S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.          Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

LOS ANGELES,CA                          Page 1 of 2                Printed on 12/27/2017 3:22:03 PM
Document: AS 2008.1445795

Recording requested by:

When recorded mail to:

Indymac Bank FSB
6900 Beatrice Drive
Kalamazoo, MI 49009

08/12/08
**20081445795**

Space above this line for recorders use

TS # CA-08-153268-DL           Order # E819844           Loan # 3002889594
                                                         Investor No. 6146077

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**IndyMac Bank F.S.B.**

all beneficial interest under that certain Deed of Trust dated 3/1/2007 executed by ISADORE
ROSENBERG, A WIDOWER, as Trustor(s) to FIDELITY NATIONAL TITLE COMPANY, as Trustee and
recorded as Instrument No 20070575007, on 3/15/2007, in Book xxx, Page xxx of Official Records, in
the office of the County Recorder of LOS ANGELES County, CA together with the Promissory Note
secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust

Dated: 4/16/2008 7:55 AM          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
                                  INC. AS NOMINEE FOR AMPRO MORTGAGE, A
                                  DIVISION OF UNITED FINANCIAL MORTGAGE CORP.

                                  By: _____
                                      Laura Hescott      - VP

State of MN
County of Dakota

On Avg 4 before me, _____ a notary public
personally appeared _____ Laura Hescott _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal

Signature _____          (Seal)

                                  JAMES C MORRIS
                                  NOTARY PUBLIC - MINNESOTA
                                  MY COMMISSION
                                  EXPIRES JAN. 31, 2009

# EXHIBIT 6

This page is part of your document - **DO NOT DISCARD**





**20100248050**

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/24/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201002240240005

00001969129



002554585

SEQ:
13

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED          T35

LOS ANGELES,CA                    Page 1 of 3              Printed on 12/27/2017 3:22:03 PM
Document: AS 2010.248050

161

2

Recording requested by:

When recorded mail to:
OneWest Bank, FSB
888 East Walnut Street
Pasadena, CA 91101



Space above this line for recorder's use

TS # CA-08-153268-DL          Order # EB19844          Loan # 3002889594
                                                      Investor No. 6146077

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**Deutsche Bank National Trust Company as Trustee for ALLIANCE 2007-OA1**

all beneficial interest under that certain Deed of Trust dated 3/1/2007 executed by **ISADORE
ROSENBERG, A WIDOWER,** as Trustor(s) to **FIDELITY NATIONAL TITLE COMPANY,** as Trustee and
recorded as Instrument No. 20070575007, on 3/15/2007, in Book xxx, Page xxx of Official Records, in
the office of the County Recorder of **LOS ANGELES** County, CA together with the Promissory Note
secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

"This Instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

Page 1 of 2

LOS ANGELES,CA                        Page 2 of 3                    Printed on 12/27/2017 3:22:04 PM
Document: AS 2010.248050

Case 2:18-cv-10188-AG   Document 42-2   Filed 08/02/19   Page 49 of 154   Page ID #:772

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14   Page 41 of 96
Branch :F7I,User :TZ05                          Document                                    Station Id :FAIB

TS# CA-08-153268-DL
Page 2

Effective Date: 4/16/2008 7:55 AM

IndyMac Bank, F.S.B.

By: _____
Erica A. Johnson-Seck
Attorney In Fact

State of   **Texas**
County of   **Travis**

On _____ before me, _____, a notary public
personally appeared _____ Erica A. Johnson-Seck _____, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the
State of _____ Texas _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____   (Seal)

KRYSTLE GISSELLE PRICE
Notary Public, State of Texas
My Commission Expires
June 15, 2011

Page 2 of 2

# EXHIBIT 7

This page is part of your document - DO NOT DISCARD






## 20151344164

Pages:
0006

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/03/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 37.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 37.00 |



LEADSHEET



201511030300008

00011328037



007200150

SEQ:
01

ERDS - 8:00AM




THIS FORM IS NOT TO BE DUPLICATED

TSG1509-CA-2151417_547e

LOS ANGELES,CA                    Page 1 of 6              Printed on 12/27/2017 3:22:04 PM
Document: ND 2015.1344164

TS No.: 2015-04438-CA

RECORDING REQUESTED BY:
Premium Title of California

WHEN RECORDED MAIL TO:
Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328

TS No.: 2015-04438-CA
APN No.:2669-025-015

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$ 183,122.41 as of 11/06/2015**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) **required** by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Version 1.1 CA NOD 0515                                                    Page 1 of 4

TS No.: 2015-04438-CA

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ALLIANCE BANCORP MORTGAGE BACKED PASS-THROUGH CERTIFICATE SERIES 2007-OA1, By Ocwen Loan Servicing, LLC, its attorney in-fact**

C/O Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328
Servicer Phone: 877-596-8580

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. **Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That Western Progressive, LLC is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 03/01/2007, executed by, **Isadore Rosenberg, A Widower**, as Trustor, to secure certain obligations in favor of AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP., As Lender, Mortgage Electronic Registration Systems, Inc., As Beneficiary ., recorded 03/15/2007 , as Instrument No. 20070575007 , in Book ---, Page --- , of Official Records in the Office of the Recorder of Los Angeles County, California describing land therein as: As more particularly described on said Deed of Trust.

Version 1.1 CA NOD 0515                                                      Page 2 of 4

TS No.: 2015-04438-CA

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
## DEED OF TRUST

Street Address or other common designation of real property:

**15814 Septo Street, North Hills Area, CA 91343**

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of $ 390,000.00. A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

**Installment of Principal and Interest plus impounds and/or advances which became due on 01/01/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

**You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.**

**Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.**

**Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.**

That by reason thereof, the present beneficiary under such deed of trust, has delivered to said duly appointed Trustee, a written request to commence foreclosure, and has deposited with said duly appointed Trustee, a copy of the deed of trust and other documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

"See Attached Declaration"

YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF WITHIN THIRTY (30) DAYS. THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF. SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID. IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

Version 1.1 CA NOD 0515                                        Page 3 of 4

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14   Page 47 of 96
Branch :F7I,User :TZ05                           Document                              Station Id :FAIB

TS No.: 2015-04438-CA

2. The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

Dated: October 30, 2015

Western Progressive, LLC, as Trustee for beneficiary

Stephanie Spurlock, Trustee Sale Assistant

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Version 1.1 CA NOD 0515                                               Page 4 of 4

LOS ANGELES,CA                         Page 5 of 6              Printed on 12/27/2017 3:22:05 PM
Document: ND 2015.1344164

Branch :F7I,User :TZ05                    Comment                                    Station Id :FAIB

## California Declaration of Compliance
### (Civ. Code § 2923.55(c))

Borrower(s):   Estate of Isadore Rosenberg
Loan No.:    7191069157

The undersigned declares as follows:

I am employed by the undersigned mortgage servicer, and I have reviewed its business records for the borrower's loan, including the borrower's loan status and loan information, to substantiate the borrower's present loan default and the right to foreclose. The information set forth herein is accurate, complete and supported by competent and reliable evidence that I have reviewed in the mortgage servicer's business records. Those records reflect *one* of the following.

☐   The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55. Thirty days, or more, have passed since the initial contact was made.

The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thirty (30) days, or more, have passed since these due diligence requirements were satisfied.

☐   The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the individual does not meet the definition of a "borrower" under Civil Code §2920.5(c).

☐   The mortgage servicer was not required to comply with California Civil Code § 2923.55 because the above-referenced loan is not secured by a first lien mortgage or deed of trust that secures a loan on "owner-occupied" residential real property as defined by California Civil Code § 2924.15(a)

Signed and Dated:

By: Ocwen Loan Servicing, LLC, as Servicer for DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ALLIANCE BANCORP MORTGAGE BACKED PASS-THROUGH CERTIFICATE SERIES 2007-OA1



| Angel Ramos | C. Ramos | 10/2/15 |
|---|---|---|
| Print Name | Signature | Date |
| Contract Management Coordinator | | |

46960

LOS ANGELES,CA                    Page 6 of 6                    Printed on 12/27/2017 3:22:05 PM
Document: ND 2015.1344164

# EXHIBIT 8

Branch :F7I,User :TZ05                         Comment:                              Station Id :FAIB




This page is part of your document - DO NOT DISCARD



## 20151367519

Pages:
0002

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**11/09/15 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |





LEADSHEET



201511090230010

00011349579



007210808

SEQ:
01

ERDS - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

TSG1509-CA-2757417_5906

LOS ANGELES,CA                         Page 1 of 2                    Printed on 12/27/2017 3:22:05 PM
Document: RN 2015.1367519

T.S. No.: 2015-04438-CA

APN No.: 2669-025-015

RECORDING REQUESTED BY:
Western Progressive, LLC

AND WHEN RECORDED MAIL TO
Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd NE, Bldg 400, Suite 200
Atlanta, GA 30328

_____    SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: 2015-04438-CA

## NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That Western Progressive, LLC is duly appointed Trustee under a Deed of Trust dated 03/01/2007, executed by Isadore Rosenberg, A Widower, as Trustor, to secure certain obligations in favor of AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP., As Lender, Mortgage Electronic Registration Systems, Inc., As Beneficiary, as Beneficiary, recorded 03/15/2007 as Instrument No. 20070575007, in book ---, page -, of Official Records in the Office of the Recorder of Los Angeles County, California describing land therein as more fully described on the above referenced deed of trust.

Notice is hereby given by this document that the Beneficiary and/or Trustee does hereby rescind, cancel and withdraw the Notice of Default and Election to Sell. It is the intention of the Beneficiary that the above-described Deed of Trust and all obligations secured thereby shall remain in full force and effect and maintain its rightful priority as if said Notice of Default and Election to Sell had not been recorded.

Said Notice of Default and Election to Sell was recorded on 04/17/2008 in the office of the Recorder of Los Angeles County, California, Instrument No. 20080669043, in Book ---, Page--- , of Official Records.

Dated: November 2, 2015

Western Progressive, LLC, as Trustee

By: _____

Tanesha Humphrey, Trustee Sale Assistant

Version 1.1 CA NOR 0515                                Page 1 of 1

173

# EXHIBIT 9

Branch :F7I,User :TZ05                    Comment:                                    Station Id :FAIB

**This page is part of your document - DO NOT DISCARD**







## 20170317787

Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**03/21/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



L E A D S H E E T



201703210970020

00013494599

008215333

SEQ:
01

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

TSG1701-CA-?????40_0bff7

LOS ANGELES,CA
Document: AS 2017.317787

Page 1 of 3

Printed on 12/27/2017 3:22:05 PM

Branch :F7I,User :TZ05                    Comment                                    Station Id :FAIB

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401

2015-04458-CA

CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #:7191069157 *ROSENBERG*
SELLER'S LENDER ID#: NCR 24110
OLD SERVICING #: 3002889594

For Value Received, FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, F.S.B.
hereby grants, assigns and transfers to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR
ALLIANCE BANCORP MORTGAGE BACKED PASS-THROUGH CERTIFICATE SERIES 2007-OA1 at C/O OCWEN
LOAN SERVICING, LLC., 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL 33409 all its interest under
that certain Deed of Trust dated 03/01/2007 , in the amount of $390,000.00, executed by ISADORE
ROSENBERG, A WIDOWER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS
NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP. ITS
SUCCESSORS AND/OR ASSIGNS and Recorded: 03/15/2007 as Instrument No.: 2007-0575007 in the County of Los
Angeles, State of California.

Legal:  See above referenced recorded deed of trust for full legal description

THE PURPOSE OF THIS CORRECTIVE ASSIGNMENT OF DEED OF TRUST IS TO CORRECT THE ASSIGNEE ON
THE ASSIGNMENT RECORDED ON 2/24/2010 IN INSTRUMENT NUMBER 20100248050

In witness whereof this instrument is executed.

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC BANK, F.S.B.

On   MAR 1 0 2017

Jon Dickerson
Attorney In Fact

This assignment is made without recourse, representation
or warranty, express or implied, by the FDIC in its
corporate capacity or as Receiver

*AA8*AABOMAC*03/28/2017 03:55:03 PM* CMAC40CMACA00000000000005081848* CALOS A* 7191069157 CASTATE_TRUST_ASSIGN_A$5N  *ROSGOMAC*

Branch :F7I,User :TZ05                                                                Station Id :FAIB

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF _____ **TEXAS**
COUNTY OF _____ **TRAVIS**

On __MAR 1 0 2017__ before me, _____ Lucia C. Castro _____ a Notary Public in and for **TRAVIS** in
the State of _____ **TEXAS** _____, personally appeared _____ Jon Dickerson _____, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that
by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_____
Lucia C. Castro
Notary Expires: 1 / 6 27 19

```
LUCIA C CASTRO
Commission # 128757157
My Commission Expires
September 27, 2019
```

(This area for notarial seal)

"AAS*AASCMAC*03/28/2017 03:55:01 PM* GMAC40CMA/CA000000000000005041848* CALOS A*7191089152* CAS1ATE_TRUST_ASSIGN_ASSN *1IOSCMAC*

# EXHIBIT 10



This page is part of your document - DO NOT DISCARD





**20170554108**

Pages:
0004

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**05/18/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



L E A D S H E E T



201705180240094

00013732462



008336970

SEQ:
01

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED

TSG1701-CA-?1?0040_cc21

LOS ANGELES,CA
Document: NT 2017.554108

Page 1 of 4                    Printed on 12/27/2017 3:22:05 PM

179

TS No.: 2015-04438-CA

RECORDING REQUESTED BY
**Premium Title of California**

AND WHEN RECORDED MAIL TO:
Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd. NE; Bldg. 400, Suite 200
Atlanta, GA 30328

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: 2015-04438-CA                           A.P.N.:2669-025-015
Property Address: 15814 Septo Street, North Hills Area, CA 91343

### NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a) and (d), THE SUMMARY OF INFORMATION
REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT
BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IMPORTANT NOTICE TO PROPERTY OWNER:**
YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 03/01/2007. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.

Trustor: Isadore Rosenberg, A Widower
Duly Appointed Trustee: Western Progressive, LLC
Deed of Trust Recorded 03/15/2007 as Instrument No. 20070575007 in Book ---, Page --- and of Official
Records in the office of the Recorder of Los Angeles County, California
Date of Sale: 07/05/2017 at 11:00 AM
Place of Sale:        BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC
                      CENTER PLAZA, POMONA, CA 91766

Estimated amount of unpaid balance, reasonably estimated costs and other charges: $672,534.94

Version 1.1 CA NOS 0417                                                    Page 1 of 3

Case 1:17-ap-01096-VK    Doc 17-1    Filed 02/13/18    Entered 02/13/18 09:52:54    Desc
Exhibit Exhibits 1-14    Page 59 of 96
Branch :F7I,User :TZ05                    Comment:                           Station Id :FAIB

TS No.: 2015-04438-CA

## NOTICE OF TRUSTEE'S SALE

THE TRUSTEE WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

More fully described in said Deed of Trust.

Street Address or other common designation of real property: 15814 Septo Street, North Hills Area, CA 91343
A.P.N.: 2669-025-015

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $672,534.94.

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

TS No.: 2015-04438-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (866)-960-8299 or visit this Internet Web site http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx using the file number assigned to this case 2015-04438-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

> Western Progressive, LLC, as Trustee for Beneficiary
> C/o 30 Corporate Park, Suite 450
> Irvine, CA 92606
> Sale Information Line: (866) 960-8299
> http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx

Date: May 16, 2017            Tanesha Humphrey, Trustee Sale Assistant

WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

Version 1.1 CA NOS 0417                                          Page 3 of 3

# EXHIBIT 11



This page is part of your document - **DO NOT DISCARD**



## 20171454376

Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/14/17 AT 01:34PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



L E A D S H E E T



201712141080068

00014654421

008787383

**SEQ:
01**

SECURE - Daily



THIS FORM IS NOT TO BE DUPLICATED

17-080192 ROSENBERG DC

LOS ANGELES,CA                    Page 1 of 3                Printed on 12/27/2017 3:22:06 PM
Document: AS 2017.1454376

184

Branch :F71,User :TZ05                         Comment:                                    Station Id :FAIB

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
1785 INTERNATIONAL WAY
IDAHO FALLS, ID 83402

CORPORATE ASSIGNMENT OF DEED OF TRUST

Los Angeles, California
SELLER'S SERVICING #:7191069157 "ROSENBERG"
SELLER'S LENDER ID#: DCR 24423.2
OLD SERVICING #: 3002889594

MIN #: 100030307920268900  SIS #: 1-888-679-6377

For Value Received, Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for AMPRO
Mortgage, a division of United Financial Mortgage Corporation, its successors and/or assigns hereby grants, assigns
and transfers to INDYMAC BANK, F.S.B.at 155 NORTH LAKE AVENUE, PASADENA, CA 91101 all its interest
under that certain Deed of Trust dated 03/01/2007 , in the amount of $390,000.00, executed by ISADORE
ROSENBERG, A WIDOWER to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY
AS NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP. ITS
SUCCESSORS AND/OR ASSIGNS and Recorded: 03/15/2007  as Instrument No.: 2007-0575007 in the County of
Los Angeles, State of California.

Legal:  See above referenced recorded Deed of Trust for full legal description

THE PURPOSE OF THIS CORRECTIVE ASSIGNMENT OF DEED OF TRUST IS TO ADD EXECUTION DATE AND
TO CORRECT THE ASSIGNOR ON THE ASSIGNMENT RECORDED ON 8/12/2008 IN INSTRUMENT NUMBER
20081445795

In witness whereof this instrument is executed,

Mortgage Electronic Registration Systems, Inc. ("MERS"), solely as nominee for AMPRO Mortgage, a division of
United Financial Mortgage Corporation, its successors and/or assigns
On   NOV 3 0 2012

_____
Joe X. Simmons            , Assistant
Secretary

"AAD*AA50OMAC*1 "0000*2 10:1 2:22 AM' GMACMGVMGAG00000000000SD019012' CALOS A" 7N" 069157 CASTATE_TRUST_ASSIGN_ASSV  "JOEGMAC"

LOS ANGELES,CA                          Page 2 of 3                     Printed on 12/27/2017 3:22:06 PM
Document: AS 2017.1454376

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF ___ Florida
COUNTY OF ___ Palm Beach

On NOV 3 0 2017 ____ before me, ____ Shiline King ____, a Notary Public in and for ____ Palm Beach ____, in
the State of ____ Florida ____, personally appeared ____ Joe A. Simmons ____, Assistant Secretary, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Shiline King
Notary Expires:   SEP 1 8 2020

Notary Public State of Florida
Shiline King
My Commission GG 031114
Expires 09/18/2020

(This area for notarial seal)

*AAB*AASGMAC*1 (4/30/2017 / *0:12:23 AM* CMMO49GMACARC6909/0000/8/0052/19/41C* CALOS A* 7791068157 CASFATE_TRUST_ASSIGN_ASSN  **JOEGMAC*

# EXHIBIT 12

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
                        Exhibit Exhibits 1-14   Page 66 of 96
(Page 1 of Case 1:17-ap-01096-VK   Doc 7-1   Filed 12/29/17   Entered 12/29/17 11:37:37   Desc
                        Exhibits A-K   Page 53 of 83



FILED
Los Angeles Superior Court

AUG 27 2009

John A. Clarke, Executive Officer/Clerk

BY_____

DATE OF HEARING:

OCT 29 2009

Times: ___ Dept.: 1

1   STEWART LEVIN, ESQ., Bar #101034
2   415 N. Crescent Dr., Suite 320
    Beverly Hills, CA 90210
3   Tel: (310) 777-7550 Fax: (310) 860-1560

4   Attorneys for Petitioner STEVEN MARK ROSENBERG
    as Trustee of the Isadore Rosenberg Family Trust and
5   Petitioner STEVEN MARK ROSENBERG
    as Administrator of the Estate of Isadore Rosenberg

6

7           SUPERIOR COURT OF THE STATE OF CALIFORNIA

8               FOR THE COUNTY OF LOS ANGELES

9   In Re: Matter of ESTATE OF ISADORE         Case No: BP109162
10  ROSENBERG, Deceased,
                                               Case assigned for all purposes to:
11
    STEVEN MARK ROSENBERG as Trustee of the    Dept. 11 Honorable Michael I. Levanas
12  Isadore Rosenberg Family Trust and STEVEN
    MARK ROSENBERG as Administrator of the     VERIFIED PROBATE CODE SECTION 850
13  Estate of Isadore Rosenberg,               PETITION TO DETERMINE TITLE TO
                                               REAL PROPERTY TO ESTATE [AND
14              Petitioners,                    RELATED CAUSES OF ACTION]

15  v.                                         1.  DECLARATORY RELIEF AS TO
16                                                 DEFENDANT ESTATE AND
    FIDELITY  NATIONAL  TITLE  INSURANCE           DEFENDANT FIDELITY TITLE
17  COMPANY,    MORTGAGE    ELECTRONIC            COMPANY
    REGISTRATION   SYSTEMS,   INC.,   R.D.
18  SALAZAR  AND  DOES 1 THROUGH 100,          2.  SLANDER OF TITLE AS TO
    INCLUSIVE.                                      RESPONDENTS
19
                Respondents.                   3.  CANCELLATION OF WRITTEN
20                                                 INSTRUMENT BASED ON
                                                   FORGERY (BY PETITIONERS
21                                                 AGAINST ALL RESPONDENTS)

22                                             4.  RESCISSION UNDER CIVIL CODE
23                                                 SECTION 39 (BY PETITIONERS
                                                   AGAINST ALL RESPONDENTS)
24
                                               5.  [Prob.C. §850(a)(2)(C)] (B)]
25                                                 [Prob.C. §850(a)(3)(B)] (C)]

26                                             6.  QUIET TITLE
27                                    1

    VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE

                                                                        55

Doc# 1 Page# 1 - Doc ID = 1339743158 - Doc Type = OTHER

1

2

3   COMES NOW Petitioner STEVEN MARK ROSENBERG as Trustee of the Isadore Rosenberg

4   Family Trust and Petitioner STEVEN MARK ROSENBERG as Administrator of the Estate of Isadore

5   Rosenberg for their causes of action against Respondents FIDELITY NATIONAL TITLE INSURANCE

6   COMPANY, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., R.D. SALAZAR and Does 1

7   through 100, inclusive, complains and alleges as follows:

8                                    PRELIMINARY ALLEGATIONS

9   1.   Isadore Rosenberg represented by STEVEN MARK ROSENBERG as Administrator of the Estate

10       of Isadore Rosenberg, (hereinafter referred to as "Petitioner" and referred to collectively with

11       Petitioner STEVEN MARK ROSENBERG as Trustee of the Isadore Rosenberg Family Trust dated

12       May 4, 1990, as "Petitioners") is, and at all times mentioned in this complaint, was a resident of Los

13       Angeles County, California. Isadore Rosenberg, as Trustee, as of March 6, 2007 was record title

14       holder of the real property identified as 15814 Septo Street, North Hills, California 91343 ("Subject

15       Property") and more specifically described as Lot 15 of Tract No. 16376, in the City of Los Angeles;

16       County of Los Angeles, State of California, as per map recorded in Book 507, Pages 5 and 6 of

17       Miscellaneous Maps; in the office of the county recorder of said county.

18

19   2.   Petitioner Steven Mark Rosenberg is Successor and currently acting Trustee of the Isadore

20       Rosenberg Trust dated May 4, 1990.

21   3.   Petitioner Steven Mark Rosenberg as Special Administrator of the Estate of Isadore Rosenberg

22       (hereinafter referred to as "the Estate") was appointed Administrator of the Estate of his late father,

23       Isadore, with Letters of Administration issued on April 24, 2008, pursuant to which a probate estate

24       has been opened with the Los Angeles County Superior Court, Probate Case #BP109162 and

25       pursuant to which Steven Mark Rosenberg was granted letters testamentary. Isadore Rosenberg

26

27

2

VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE

Doc# 1 Page# 2 - Doc ID = 1339743158 - Doc Type = OTHER

1    (hereinafter referred to as "Decedent") was a resident of Los Angeles County, California and

2    resided at 15814 Septo Street, North Hills, California 91343, the Subject Property. Isadore

3    Rosenberg died on August 7, 1997.

4.    Prior to his death, Isadore Rosenberg's name was forged on a number of written instruments that

5        were recorded on the Subject Property. R.D. SALAZAR was the notary who affixed his notary seal

6        to the forged signature of Isadore Rosenberg, without ascertaining that Isadore Rosenberg was

7        really the person that he was purported to be at the time of the subject signatures on the subject

8        instruments. The caregiver of Isadore Rosenberg, who was at all times material hereto in his

9        eighties, and suffering from cognitive deficits, and dependent upon his caregiver for physical needs,

10        took advantage of Isadore Rosenberg's dependency, and cleaned him out of his life savings, and

11        then began initiating a series of forged documents that resulted in the subject property going from

12        free and clear ownership in the name of Isadore Rosenberg, Trustee U/T/D: May 4, 1990 to

13        approximately $390,000 of loans and liens being recorded upon the subject property. The caregiver

14        was aided and abetted by loan brokers, and the Respondents in this action and Isadore Rosenberg

15        received no benefit from any these loans. The purpose of this Petition is to cancel the instrument

16        known as a Deed of Trust dated March 1, 2007 recorded on March 15, 2007 as Instrument #

17        20070575007. This instrument bears the forged signature of Isadore Rosenberg and is void at law.

18    5.    Defendant Fidelity National Title Insurance Company (hereinafter referred to as "Fidelity") is, and at

19        all times mentioned in this complaint, was a corporation duly organized and existing under the laws

20        of the State of California and doing business in Los Angeles County as a title insurance company.

21    6.    Defendant Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as "MERS") is,

22        and at all times mentioned in this complaint, was a corporation duly organized and existing under

23        the laws of the State of California and doing business in Los Angeles County.

24    7.    Defendant R.D. SALAZAR (hereinafter referred to as "Salazar") was, and now is, an individual

3

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

Doc# 1 Page# 3 - Doc ID = 1339743158 - Doc Type = OTHER

Case 2:18-cv-10188-AG   Document 42-2   Filed 08/02/19   Page 77 of 154   Page ID #:800

Case 1:17-ap-01096-VK    Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14   Page 69 of 96
(Page 4 of  Case 1:17-ap-01096-VK    Doc 7-1   Filed 12/29/17   Entered 12/29/17 11:37:37   Desc
Exhibits A-K   Page 56 of 83

1    residing in the County of Los Angeles, State of California and doing business as a notary public.

2    8.  Petitioner STEVEN MARK ROSENBERG as Trustee of the Isadore Rosenberg Family Trust dated

3    May 4, 1990 was record title holder on the subject property as of March 4, 2007. On March 5, 2007

4    the signature of Isadore Rosenberg was forged on Grant Deed Instrument #20070575006 attached

5    hereto as Exhibit 1. Although recorded this document was apparently withdrawn and can no longer

6    be found on title because it was forged.

7    9.  Petitioners do not know the true names of Respondents All Persons Unknown, Claiming Any Legal

8    or Equitable Right, Title, Estate, Lien, or Interest in the Property Described in the Complaint

9    Adverse to Petitioners' Title, or Any Cloud On Petitioners' Title Thereto and DOES 1 through 100,

10   inclusive, and therefore sues them by those fictitious names. Petitioners are informed and believe

11   and on that basis allege that each of the DOE Respondents claims, or may claim, some interest in

12   the real property described in paragraph 1 of this complaint. The names, capacities and

13   relationships of Does 1 through 100 will be alleged by amendment to this complaint when the same

14   are known.

15

16   10. Petitioners are informed and believe and on that basis allege, that at all times mentioned in this

17   complaint, Respondents were the agents and employees of their co-Respondents and in doing the

18   things alleged in this complaint were acting within the course and scope of that agency and

19   employment.

20   11. Petitioners are informed and believe and on that basis allege that Respondents now claim an

21   ownership interest or lien adverse to Petitioners' title in the Subject Property based on the

22   allegation that Deed of Trust [Exhibit 2] identified further as Instrument # 20070575007 was duly

23   executed by Isadore Rosenberg. In fact this instrument bears only the forged signature of Isadore

24   Rosenberg, and is void. Petitioners' retain title to the Subject Property free of any liens, and this

25   instrument along with the subject Grant Deed Exhibit #1 should be cancelled. At no time did

26

27

4

VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE

Doc# 1 Page# 4 - Doc ID = 1339743158 - Doc Type = OTHER

1  Isadore Rosenberg ever obtain any benefit from the recording of these instruments, and all monies

2  purportedly loaned to Isadore Rosenberg or his trust were actually paid to the benefit of the criminal

3  caregiver of Isadore Rosenberg. Further, Petitioners have recorded a lis pendens on the Subject

4  Property based on the pendency of this Probate Code § 850 Petition to Establish Petitioners' Claim

5  of Ownership to the Subject Property. Upon cancellation of the subject instruments identified herein

6  and incorporated herein by reference as Exhibits 1 and 2, the Petitioners will own the subject

7  property free and clear of any liens.

8

9

10

11                                    FIRST CAUSE OF ACTION

12                              Declaratory Relief as to all Respondents

13

14  12. Petitioners reallege and incorporate by reference as if set forth herein in full each and every

15       allegation contained in paragraphs I through 16 of the Petition.

16  13. An actual controversy has arisen and now exists between Petitioners and Respondents concerning

17       their respective rights and duties. More specifically, Petitioners contend that they are the legal

18       owners of the Subject Property and Respondents dispute this contention and contend that Fidelity

19       is or should be record title holder of a Deed of Trust on the Subject Property.

20  14. Petitioners desire a judicial determination of their respective rights and duties and a declaration that

21       they are owners of the Subject Property in fee simple title without any liens as of the year 2001.

22       Both Isadore Rosenberg and Norma Rosenberg are deceased, and Steven Mark Rosenberg is their

23       only heir, the sole beneficiary of the Petitioners.

24  15. A judicial declaration is necessary and appropriate at this time under the circumstances in order

25       that Petitioners may ascertain their rights and duties as to ownership of the Subject Property.

26                                               5

27  _____

     VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE

16. An actual controversy has arisen and now exists between Petitioners and all Respondents concerning their respective rights and duties. More specifically, Respondents contend that IndyMac has a valid lien on the subject property.

17. Petitioners desire a judicial determination of their respective rights and duties and a declaration that the subject instruments Exhibits 1 and 2 were forged and void at law.

18. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Petitioners and Respondents may ascertain their rights and duties as to the subject property.

### SECOND CAUSE OF ACTION

#### Slander of Title as to all Respondents

19. Petitioners reallege and incorporate by reference as if set forth herein in full each and every allegation contained in paragraphs I through 23 of the Petition.

20. On or about March 1, 2007, Fidelity and MERS slandered Petitioners' title to the Subject Property in that a Deed of Trust, per Exhibit 2, without justification, was recorded on the Subject Property when in fact Respondents did not then and do not now have any lien or ownership rights in the Subject Property.

21. Petitioners have been damaged by the slander of title in that Petitioners' title to the Subject Property has been cast in doubt and the marketability, sale ability, and value of the Subject Property have been impaired.

22. Petitioners, therefore, request this court to cancel Exhibit 2 and thereby remove it as a lien on the subject property.

### THIRD CAUSE OF ACTION

#### Cancellation of Written Instrument Based on Forgery as to all Respondents

23. Petitioners reallege and incorporate by reference as if set forth herein in full each and every

6

VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE

Doc# 1 Page# 6 - Doc ID = 1339743158 - Doc Type = OTHER

allegation contained in paragraphs 1 through 22 of the Petition.

24. The Deed of Trust (Exhibit 2) is in existence which purports to encumber the Subject Property.

25. On information and belief, Isadore Rosenberg never signed the Deed of Trust (Exhibit 2). Isadore Rosenberg's signature on that Deed of Trust is forged.

26. Petitioners intend service of the Summons and Complaint in this action to serve as a notice of cancellation of the forged Deed of trust. Isadore Rosenberg received no monies from the loan secured by this Deed of Trust nor any of the secured loans that this loan allegedly paid off.

27. Petitioners now seek to cancel the Deed of Trust pursuant to California Civil Code Section 3412.

### FOURTH CAUSE OF ACTION

#### Rescission Under Civil Code Section 39 as to all Respondents:

28. Petitioners reallege and incorporate by reference as if set forth herein in full each and every allegation contained in paragraphs 1 through 27 of the Petition.

29. At all times material to this Petition Isadore Rosenberg was a person of unsound mind due to age and infirmity and who was substantially unable to manage her own financial resources and/or resist fraud and/or undue influence.

30. As a result, under the provisions of Civil Code Section 39(a), the Grant Deed [Exhibit 1], the Deed of Trust [Exhibit 2] and the underlying loan are subject to rescission as provided in Civil Code Section 1688.

31. On information and belief, Isadore Rosenberg, whether as Trustee or in an individual capacity, received no actual benefits from the loans that were taken out on his property by his caregiver. Since Isadore Rosenberg received no benefits from the loans Petitioners have nothing to restore.

32. At all times material hereto Respondents should have been aware that the pattern of loans on the home of an elderly person was suspicious and they had grounds for investigation which each Respondent purposely ignored in order to make a profit. This aided and abetted the plan of the

7

VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE

caregiver to put a false lien on the subject property.

### FIFTH CAUSE OF ACTION

Probate Code Sections 850(a)(2)(C), 850 (a)(2)(D), 850(a)(3)(B) and 850(a)(3)(C) as to all Respondents

33. Petitioners reallege and incorporate by reference as if set forth herein in full each and every allegation contained in paragraphs I through 37 of the Petition.

34. Petitioners request that pursuant to Probate Code Sections 850(a)(2)(C) and 850 (a)(2)(D), this Court determine that title to the above-described Subject Property be free and clear of any liens or encumbrances, is vested in Petitioner as administrator of The Estate of Isadore Rosenberg, and further, Petitioners request that, in the alternative, the court determine that per Probate Code Sections 850(a)(3)(B) and 850(a)(3)(C) title to the above described Subject Property be free and clear of any liens or encumbrances, is vested in Petitioner STEVEN MARK ROSENBERG as Trustee of the Isadore Rosenberg Family Trust dated May 4, 1990.

### SIXTH CAUSE OF ACTION

#### Quiet Title as to all Respondents

35. Petitioners reallege and incorporate by reference as if set forth herein in full each and every allegation contained in paragraphs I through 39 of the Petition.

36. Petitioners allege that all of the Respondents have failed to respond to Petitioners or demonstrate to Petitioners that the signature of Isadore Rosenberg was not forged.

37. Petitioners allege that because the signature of Isadore Rosenberg was forged Petitioners contend the following transactions were unlawful, are an impermissible cloud on the title, and are required to be cancelled, with title quieted.

38. Petitioners are entitled to a judicial declaration quieting title in Petitioners, as of the filing of this Petition, that Petitioner is the fee owner of a one hundred percent (100%) undivided interest in the Subject Property, subject only to legitimate obligations and encumbrances

8

**VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE**

WHEREFORE, Petitioners STEVEN MARK ROSENBERG, as Trustee of the Isadore Rosenberg Family Trust, and Petitioner STEVEN MARK ROSENBERG, as Administrator of the Estate of Isadore Rosenberg, pray for judgment against  Respondents FIDELITY NATIONAL TITLE INSURANCE COMPANY, R.D. SALAZAR, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AND DOES 1 THROUGH 100, INCLUSIVE as follows:

1. Declaring that the Grant Deed (Exhibit 1), Deed of Trust (Exhibit 2) and underlying loan are void and of no effect at law are cancelled;

2. Requiring Respondent Fidelity Title Company and/or any assignees to sign a Full Reconveyance of the Deed of Trust, and should Respondent fail to so execute said Full Reconveyance upon verified application filed by Petitioners' counsel, the Clerk of the Court shall forthwith execute a Full Reconveyance on behalf of Respondent and/or any assigns. The Full Reconveyance executed by the Clerk of Court shall state that it is being executed in accordance with the judgment in this case and shall state the case number;

3. For a declaration that Petitioners' have fee simple title to the Subject Property and that Respondents have no right, title, or interest in or to the Subject Property;

4. That this Court declare and enter an order and judgment that the Deed of Trust dated March 1, 2007 Exhibit 2 is null and void *ab initio* and never encumbered the Subject Property;

5. The above-described Subject Property belongs to the Petitioners or one Petitioner and that title to the above-described Subject Property rightfully belongs to Petitioner as administrator of the estate of Isadore Rosenberg or the Petitioner as Trustee of the Isadore Rosenberg Family Trust dated May 4, 1990 and that Exhibits 1 and 2 are cancelled, and that no other party, including any of the Respondents have any lien or equitable rights related to the Subject Property.

6. For actual damages against R.D. Salazar according to proof at trial.

9

VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE

Doc# 1 Page# 9 - Doc ID = 1339743158 - Doc Type = OTHER

Case 2:18-cv-10188-AG   Document 42-2   Filed 08/02/19   Page 83 of 154   Page ID #:806

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14 . Page 75 of 96
(Page 10  of Case 1:17-ap-01096-VK   Doc 7-1   Filed 12/29/17   Entered 12/29/17 11:37:37   Desc
Exhibits A-K   Page 62 of 83

7.   For costs of suit and fees;

8.   For such other and further relief as this court deems just and proper.

Dated: August 24, 2009          Respectfully Submitted,

By

STEWART LEVIN, ESQ.
Attorneys for Petitioner STEVEN MARK ROSENBERG
as Trustee of the Isadore Rosenberg Family Trust
and Petitioner STEVEN MARK ROSENBERG as
Administrator of the Estate of Isadore Rosenberg

10

VERIFIED PETITION TO DETERMINE TITLE TO REAL PROPERTY TO ESTATE

64

Doc# 1 Page# 10 - Doc ID = 1339743158 - Doc Type = OTHER

Case 1:17-ap-01096-VK    Doc 17-1    Filed 02/13/18    Entered 02/13/18 09:52:54    Desc
Exhibit Exhibits 1-14    Page 76 of 96

(Page 11  of  14)  Case 1:17-ap-01096-VK    Doc 7-1    Filed 12/29/17    Entered 12/29/17 11:37:37    Desc
Exhibits A-K    Page 63 of 83

STATE OF CALIFORNIA          )
                            )
COUNTY OF LOS ANGELES       )

### VERIFICATION

I, STEVEN MARK ROSENBERG am the party in this matter in the above

entitled action or proceeding. I have read the foregoing **PROBATE CODE 850**

**PETITION AND RELATED CAUSES OF ACTION** and know the contents

thereof; and I certify that the same is true of my own knowledge, except as to those

matters which are therein stated upon my information or belief, and as to those

matters I believe it to be true.

I declare, under penalty of perjury, that the foregoing is true and correct

according to the laws of the State of California.

Executed on August 26, 2009 at BEVERLY HILLS, CALIFORNIA

STEVEN MARK ROSENBERG

65

Doc# 1 Page# 11 - Doc ID = 1339743158 - Doc Type = OTHER

198

Case 2:18-cv-10188-AG   Document 42-2   Filed 08/02/19   Page 85 of 154   Page ID #:808

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14   Page 77 of 96
(Page 12 of Case 1:17-ap-01096-VK   Doc 7-1   Filed 12/29/17   Entered 12/29/17 11:37:37   Desc
Exhibits A-K   Page 64 of 83

AND WHEN RECORDED MAIL TO:

Mr. Isadore Rosenberg
15814 Septo Street
North Hills, CA 91343

03/15/07

20070575006

THIS SPACE FOR RECORDER'S USE ONLY

Title Order No.: 19507711                                    Escrow No.: 080078-SV

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $NONE
This Conveyance transfers the Grantor's Interest out of his/her/their revocable living trust. No Tax is due
per R & T Code 11911.
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area   [X] City of Los Angeles AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Isadore Rosenberg, Successor Trustee of the Isadore and Norma P. Rosenberg Trust, dated May 4, 1990

hereby GRANT(s) to:

Isadore Rosenberg, a Widower

the real property in the City of Los Angeles, County of Los Angeles, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as: 15814 Septo Street, North Hills, CA 91343
AP#: 2669-025-015

DATED March 5, 2007
STATE OF CALIFORNIA
COUNTY OF _Los Angeles_                      _Isadore Rosenberg_   Successor Trustee
On _Mar 5 2007_
Before me, _R.D. Salazar_
A Notary Public in and for said State, personally appeared
_Isadore Rosenberg_

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

R. D. SALAZAR
Commission # 1455444
Notary Public - California
Los Angeles County
My Comm. Expires Feb 4, 2008

Signature _R.D. Salazar_                   (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

EXHIBIT B              EXHIBIT #1

66

Doc# 1 Page# 12 - Doc ID = 1339743158 - Doc Type = OTHER



Recording Requested By:
AMPRO MORTGAGE, A DIVISION OF
UNITED FINANCIAL MORTGAGE CORP.

03/18/07
**20070575007**

And After Recording Return To:
ALLIANCE BANCORP, C/O
NATIONWIDE TITLE CLEARING, INC.
ATTN: FINAL DOCS UNIT
2100 ALT 19 NORTH
PALM HARBOR, FLORIDA 34683
Loan Number: 1080101956

1950711-JC  [Space Above This Line For Recording Data]

2669-2S-15

## DEED OF TRUST

MIN:  100039307020288900

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  MARCH 1, 2007  , together
with all Riders to this document.
(B)  "Borrower" is  ISADORE ROSENBERG, A WIDOWER

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is  AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL
MORTGAGE CORP.
Lender is a  ILLINOIS CORPORATION                                    organized
and existing under the laws of  ILLINOIS
Lender's address is  2133 WEST PEORIA AVENUE, SUITE 130, PHOENIX,
ARIZONA 85029-2370

(D)  "Trustee" is  FIDELITY NATIONAL TITLE COMPANY
6060 SEPULVEDA BOULEVARD, SUITE 100, VAN NUYS, CALIFORNIA 91411

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security
Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number
of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note" means the promissory note signed by Borrower and dated  MARCH 1, 2007
The Note states that Borrower owes Lender  THREE HUNDRED NINETY THOUSAND AND
00/100                               Dollars (U.S. $  390,000.00      ) plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS     DocMagic ☎800-649-1362
Form 3005 01/01 (02/01/07)                    Page 1 of 14                              www.docmagic.com

EXHIBIT C     EXHIBIT #2

67

Doc# 1 Page# 13 - Doc ID = 1339743158 - Doc Type = OTHER

ISADORE ROSENBERG                    (Seal)
                                    -Borrower

                                     (Seal)
                                    -Borrower

                                     (Seal)
                                    -Borrower

                                     (Seal)
                                    -Borrower

                                     (Seal)
                                    -Borrower

                                     (Seal)
                                    -Borrower

Witness:                            Witness:

07 057 5007

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS       DocMagic  800-649-1362
Form 3005 01/01 (02/01/07)                     Page 13 of 14                       www.docmagic.com

EXHIBIT C                    EXHIBIT #2

68

Doc# 1 Page# 14 - Doc ID = 1339743158 - Doc Type = OTHER

# EXHIBIT 13

Case 2:18-cv-10188-AG   Document 42-2   Filed 08/02/19   Page 89 of 154   Page ID #:812

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14   Page 81 of 96
(Page 1 of  Case 1:17-ap-01096-VK   Doc 7-1   Filed 12/29/17   Entered 12/29/17 11:37:37   Desc
Exhibits A-K   Page 69 of 83

ORIGINAL

FILED
Superior Court of California
County of Los Angeles

JAN 2 0 2015

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Herman Tam

1   FIDELITY NATIONAL LAW GROUP
    DONALD E. LEONHARDT (SBN 185350)
2   915 Wilshire Blvd., Suite 2100
    Los Angeles, CA 90017
3   Telephone: (213) 438-7205
    Facsimile: (213) 438-4417
4   Email: Donald.Leonhardt@fnf.com

5   Attorneys for Respondents ONEWEST BANK, N.A.
    (formerly OneWest Bank, FSB) and DEUTSCHE BANK
6   NATIONAL TRUST COMPANY, Pursuant to the Trustee
    Pooling and Servicing Agreement Dated as of May 1, 2017,
7   as trustee for the Mortgage Back Pass-Through
    Certificates Series 2007-OA1
8

9              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10              COUNTY OF LOS ANGELES – CENTRAL DISTRICT

11

12  STEVEN MARK ROSENBERG, as Trustee       Case No.: BP109162 (Related to Case No.
    of the Isadore Rosenberg Family Trust and  BP128307)
13  STEVEN MARK ROSENBERG as                 Hon. Maria E. Stratton, Dept. 5
    Administrator of the Estate of Isadore
14  Rosenberg,
                                             NOTICE OF ORDER DISMISSING
15              Petitioner,                  ACTION WITH PREJUDICE

16       vs.
                                             Date: January 20, 2015
17  FIDELITY NATIONAL TITLE                  Time: 8:30 a.m.
    INSURANCE COMPANY, MORTGAGE             Dept.: 5
18  ELECTRONIC REGISTRATION
    SYSTEMS, INC., ONEWEST BANK, R.D.
19  SALAZAR, KIM BATEMAN, SAMIA S.
    SWEISS, CHRIS THOMPSON, LILIAN
20  GARCIA, and DOES 1 through 100,
    inclusive,
21
                Respondents.
22

23

24

25

26

27

28
                                         1
                  NOTICE OF ORDER DISMISSING ACTION WITH PREJUDICE

70

Doc# 1 Page# 1 - Doc ID = 1602404700 - Doc Type = Notice

1   TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

2       PLEASE TAKE NOTICE that, on January 20, 2015 at 8:30 a.m., the hearing on the

3   Court's Order to Show Cause re: (1) Petitioner's Failure to Appear at the December 9, 2014

4   Hearing, (2) Petitioner's Failure to Obtain Counsel; and (2) Petitioner's Failure to Sign

5   Settlement Documents came on for hearing before the Honorable Maria E. Stratton in the above

6   captioned court.  Donald E. Leonhardt of Fidelity National Law Group appeared on behalf of

7   Respondents ONEWEST BANK, N.A. (formerly OneWest Bank, FSB) and DEUTSCHE BANK

8   NATIONAL TRUST COMPANY, Pursuant to the Trustee Pooling and Servicing Agreement

9   Dated as of May 1, 2017, as trustee for the Mortgage Back Pass-Through Certificates Series

10   2007-OA1 (collectively "Respondents"); Steven Mark Rosenberg appeared (in pro per) as Trustee

11   of the Isadore Rosenberg Family Trust and as Administrator of the Estate of Isadore Rosenberg

12   (collectively "Petitioner").

13       At the hearing, Petitioner requested dismissal of the above-captioned action.  Respondents

14   did not object to Petitioner's request, and asked that the dismissal be made with prejudice.

15   Petitioner did not object to Respondent's additional request.  The Court then ORDERED that

16   the action was dismissed with prejudice, and requested that Respondents provide notice.

17

18   Date: January 20, 2015             FIDELITY NATIONAL LAW GROUP

19

20                               Donald E. Leonhardt, Esq.

21                               Attorneys for Respondents
                            OneWest Bank, N.A. (formerly OneWest Bank,

22                               FSB) and Deutsche Bank National Trust
                            Company, Pursuant to the Trustee Pooling and

23                               Servicing Agreement Dated as of May 1, 2017,

24                               as trustee for the Mortgage Back Pass-Through
                            Certificates Series 2007-OA1

25

26

27

28

                                    2

NOTICE OF ORDER DISMISSING ACTION WITH PREJUDICE

Doc# 1 Page# 2 - Doc ID = 1602404708 - Doc Type = Notice

### PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within entitled action; my business address is 915 Wilshire Boulevard, Suite 2100, Los Angeles, California 90017.

    On January 20, 2015, I served the foregoing document(s) described as NOTICE OF ORDER DISMISSING ACTION WITH PREJUDICE on the interested parties in said action:

    [X]   By placing    [ ] the original [XX] a true copy thereof enclosed in a sealed envelope addressed as follows:

### SEE ATTACHED SERVICE LIST

    [X]   (BY U.S. MAIL) I deposited such envelope in an internal collection basket. The envelope was mailed with postage thereon fully prepaid from Los Angeles, California. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if a postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

    [ ]   (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

    [ ]   (BY NORCO OVERNITE) I delivered to an authorized driver authorized by Norco Overnite to receive documents, in an envelope or package designated by Norco Overnite with delivery fees paid or provided for, addressed to the person on who it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; or at that party's place of residence.

    [ ]   (EMAIL) I caused a true copy of the document to be sent to the persons at the corresponding electronic address as indicated above on the above-mentioned date. My electronic notification address is nichole.myles@fnf.com. I am readily familiar with this firm's Microsoft Outlook electronic mail system and did not receive any electronic message or other indication that the transmission was unsuccessful.

    [X]   (STATE) I declare under the penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

    Executed on January 20, 2015, at Los Angeles, California.

                        Nichole Myles

PROOF OF SERVICE

Doc# 1 Page# 3 - Doc ID = 1602404705 - Doc Type = Notice

Case 2:18-cv-10188-AG   Document 42-2   Filed 08/02/19   Page 92 of 154   Page ID #:815

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14    Page 84 of 96
Case 1:17-ap-01096-VK   Doc 7-1   Filed 12/29/17   Entered 12/29/17 11:37:37   Desc
Exhibits A-K    Page 73 of 93



## SERVICE LIST
*Rosenberg v. Fidelity National Title Insurance Company, et al.*
Los Angeles County Superior Court Case No. BP109162

Steven Mark Rosenberg
106 ½ Judge John Aiso Street, #225
Los Angeles, CA 90012
*Petitioner in Pro Per*

Richard S. Busch, Esq.
2660 Townsgate Road, Suite 400
Westlake Village, CA 91361
*Attorneys for Respondent*
R.D. Salazar

Western Surety Company
P.O. Box 5077
Sioux Falls, SD 57117

SERVICE LIST

73

Doc# 1 Page# 4 - Doc ID = 1602404708 - Doc Type = Notice

# EXHIBIT 14

Case 2:18-cv-10188-AG   Document 42-2   Filed 08/02/19   Page 94 of 154   Page ID #:817

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14   Page 86 of 96
(Page 1  of   6 Case 1:17-ap-01096-VK   Doc 7-1   Filed 12/29/17   Entered 12/29/17 11:37:37   Desc
Exhibits A-K   Page 73 of 83

Entered 1/10/17
FILED
LOS ANGELES SUPERIOR COURT

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
JOSEPH A. LANE, CLERK

JAN 1 0 2017

Sheri R. Carter, Executive Officer/Clerk
By _____, Deputy

DIVISION 7

Los Angeles County Superior Court
111 North Hill Street
Los Angeles, CA 90012

JAN 1 0 2017

STEVEN MARK ROSENBERG,
Petitioner and Appellant,
v.
ONEWEST BANK, N.A. et al.,
Respondents.
B263242
Los Angeles County No. BP109162, BP128307

*** REMITTITUR ***

I, Joseph A. Lane, Clerk of the Court of Appeal of the State of California, for the
Second Appellate District, do hereby certify that the attached is a true and correct copy of
the original order, opinion or decision entered in the above-entitled cause on October 26,
2016 and that this order, opinion or decision has now become final.

The parties are to bear their costs on appeal.

Witness my hand and the seal of the Court
affixed at my office this

Joseph A. Lane, Clerk

by:   J. Renteria,
Deputy Clerk

COURT OF APPEAL
SECOND APPELLATE DISTRICT
STATE OF CALIFORNIA

cc:   All Counsel (w/out attachment)
File

DEC 3 0 2016

75

Doc# 1 Page# 1 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

Filed  11/17/16

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

#### SECOND APPELLATE DISTRICT

#### DIVISION SEVEN

COURT OF APPEAL – SECOND DIST.

# FILED

## Nov 17, 2016

JOSEPH A. LANE, Clerk

Derrick L. Sanders  Deputy Clerk

| | |
|---|---|
| Estate of ISADORE ROSENBERG, Deceased. | B263242 |
| STEVEN MARK ROSENBERG, Petitioner and Appellant, v. ONEWEST BANK, N.A. et al., Objectors and Respondents. | (Los Angeles County Super. Ct. Nos. BP109162 and BP128307) ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

The opinion filed October 26, 2016, and not certified for publication, is modified as follows:

      1.  The title reads as follows:

| | |
|---|---|
| STEVEN MARK ROSENBERG, Plaintiff and Appellant, v. ONEWEST BANK, N.A., et al., Defendants and Respondents. | B263242 (Los Angeles County Super. Ct. Nos. BP109162 and BP128307) |

76

Doc# 1 Page# 2 – Doc ID = 1681412057 – Doc Type = Appeal – Remittitur – Other

It should read:

| | |
|---|---|
| Estate of ISADORE ROSENBERG, Deceased. | B263242 |
| STEVEN MARK ROSENBERG,<br><br>Petitioner and Appellant,<br><br>v.<br><br>ONEWEST BANK, N.A. et al.,<br><br>Objectors and Respondents. | (Los Angeles County<br>Super. Ct. Nos. BP109162<br>and BP128307.) |

2.  On the title page, the listing of counsel reads:

Steven Mark Rosenberg, in pro. per., for Plaintiff and Appellant.

Fidelity National Law Group and Donald E. Leonhardt for Defendants and Respondents.

It should read:

Steven Mark Rosenberg, in pro. per., for Petitioner and Appellant.

Fidelity National Law Group and Donald E. Leonhardt for Objectors and Respondents.

This order does not change the judgment.  Appellant's petition for rehearing is denied.

ZELON, Acting P. J.        SEGAL, J.        GARNETT, J. (Assigned)

2

Doc# 1 Page# 3 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| STEVEN MARK ROSENBERG, | B263242 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. Nos. BP109162 and BP128307) |
| v. | |
| ONEWEST BANK, N.A., et al., | |
| Defendants and Respondents. | |

COURT OF APPEAL - SECOND DIST.

**F I L E D**

OCT 26 2016

JOSEPH A. LANE_____ Cler/

_____
Deputy Cler/

APPEAL from an order of the Superior Court of Los Angeles County, Maria E. Stratton, Judge. Reversed and remanded with directions.

Steven Mark Rosenberg, in pro. per., for Plaintiff and Appellant.

Fidelity National Law Group and Donald E. Leonhardt for Defendants and Respondents.

78

Doc# 1 Page# 4 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

## INTRODUCTION

Steven Mark Rosenberg (Rosenberg) appeals an order dismissing, at his request, two related probate actions.  He argues that the probate court erred by dismissing those actions with prejudice rather than without prejudice.  We agree the probate court erred by dismissing the actions with prejudice, and remand with directions to enter an order of dismissal without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Petition*

Rosenberg is the administrator of the estate of his father, Isadore Rosenberg, and the trustee of the Isadore Rosenberg Family Trust.  In August 2009 Rosenberg, represented by counsel, filed a petition as administrator and trustee pursuant to Probate Code section 850 to determine title to real property where someone other than the decedent or trustor claims to have title to or an interest in the property.[1]

The third amended petition alleged that Isadore Rosenberg had record title to property in North Hills, California, but that prior to his death "Isadore Rosenberg's name was forged on a number of written instruments that were recorded on the" property.  Rosenberg alleged that his father's caretaker, David Curtis Harder, "took advantage of Isadore Rosenberg's dependency, and cleaned him out of his life savings, and then began initiating a series of forged documents that resulted in the . . . property going from free and clear ownership . . . to approximately $390,000 of loans and liens being recorded" on the property.  Rosenberg further alleged that various individuals and financial institutions, including OneWest Bank and Mortgage Electronic Registration Systems, Inc., both of which Rosenberg named in his petitions, aided and abetted Harder in his

---

[1]    Rosenberg filed petitions in both the estate and the trust actions.  The petitions he filed in the trust action are not in the record.

2

Doc# 1 Page# 5 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

scheme. These documents, included deeds of trust securing promissory notes and lines of credit, were allegedly forged both before and after Isadore Rosenberg's death. Rosenberg also alleged that OneWest Bank conspired with Harder to commit elder abuse. Rosenberg's petition included causes of action for declaratory relief, cancellation, rescission, elder abuse, and determinations under Probate Code section 850, subdivisions (a)(2)(C), (a)(2)(D), (a)(3)(B), and (a)(3)(C), that Rosenberg, as administrator of the estate and trustee of the trust, held the property "free and clear of any liens or encumbrances" and owned a 100 percent undivided interest in the property.

### B.    *The Hearings*

After several unsuccessful settlement conferences in June 2014, at which Rosenberg was representing himself, the probate court on August 19, 2014 set a trial setting conference for December 9, 2014. Rosenberg did not appear at the December 9, 2014 hearing. Consequently, the court set an order to show cause for Rosenberg "to answer why no appearance [was] made" on December 9, 2014, why the court should not dismiss the petition, "and why [the] settlement has not been signed." The court set a hearing on the order to show cause for January 20, 2015, and issued a "citation" requiring Rosenberg to appear on that date.

Rosenberg appeared at the January 20, 2015 hearing, and asked the court to dismiss his petition pursuant to Code Civil Procedure section 583.310,[2] which provides: "An action shall be brought to trial within five years after the action is commenced against the defendant." This is what occurred at the hearing:

"The Court:  Mr. Rosenberg, first tell me about the settlement agreement that hasn't been signed.

"Mr. Rosenberg:  I wanted to go --

"The Court:  Are you going to sign it or are you backing out? That's all I need to know.

---

[2]     Undesignated statutory references are to the Code of Civil Procedure.

3

Doc# 1 Page# 6 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

Case 2:18-cv-10188-AG   Document 42-2   Filed 08/02/19   Page 100 of 154   Page ID #:823

Case 1:17-ap-01096-VK   Doc 17-1   Filed 02/13/18   Entered 02/13/18 09:52:54   Desc
Exhibit Exhibits 1-14   Page 92 of 96
(Page 7 of 9) Case 1:17-ap-01096-VK   Doc 7-1   Filed 12/29/17   Entered 12/29/17 11:37:37   Desc
Exhibits A-K   Page 79 of 83

"Mr. Rosenberg: This court needs to dismiss this case immediately. The rule where claimant fails to bring an action to trial within five years, and the manner in which the delay is brought to the court's attention is immaterial. And when the courts become aware of the facts, it must dismiss the action. I am telling you right now, it has been more than five years.

"In your respectful affidavit and the citation for me to appear -- no, I didn't just come from Twin Towers yet -- but in the citation, it says this original petition was filed 9/16/11. That is absolutely, patently false. This . . . petition was filed back [on] August . . . 29, 2009. It's a public policy matter for . . . cases to be dismissed after five years, mandatory. Why? Because people die who are integral to the case. People's memories fade. In this case, one of the key witnesses has dementia. . . . It's [Code of Civil Procedure section] 583.310. No, I'm not going to -- Mr. Fidelity lawyer, I'm not going silently into the night. . . .

"The Court: Can you stop a minute?

"Mr. Rosenberg: Yes.

"The Court: Okay. Isn't this your petition?

"Mr. Rosenberg: I want out. It's done. I'll have other causes of action, a lot of other causes of action, counselor.

"[¶¶]

"The Court: Do you have any objection to his request that the petition be dismissed?"

"Mr. Leonhardt [counsel for OneWest Bank]: No, your Honor.

"The Court: All right. The petition is dismissed.

"Mr. Leonhardt: With prejudice, your Honor?

"Mr. Rosenberg: It's under -- but I want to make sure it is under. . . .

"The Court: It's dismissed with prejudice and the [order to show cause] is off calendar. Okay. You got what you want, Mr. Rosenberg.

"Mr. Rosenberg: It should be dismissed through -- please make sure on the record it's dismissed under [section] 583 --

4

Doc# 1 Page# 7 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

"The Court: It's dismissed pursuant to your request. You've made your record.

"Mr. Rosenberg: 583, [section] 583.310.

"The Court: It's dismissed pursuant to your request, so you're all set."

C.    *The Appeal*

The court signed and filed a judgment of dismissal on February 3, 2015. The judgment references the two related cases and states the "entire action" is dismissed with prejudice. OneWest Bank gave notice of entry of judgment on February 11, 2015. Rosenberg timely appealed on April 6, 2015.

### DISCUSSION

Rosenberg appeals from the probate court's order granting his request to dismiss his petition. Rosenberg does not argue he was confused, did not intend to voluntarily dismiss his action, or dismissed it by mistake. Instead, Rosenberg argues that the probate court erred by dismissing his petition with prejudice. Although Rosenberg also suggests that the probate court erred by dismissing his case under the five-year statute, section 583.310, and he argues that the court should have had an evidentiary hearing, his primary contention appears to be that the court should not have dismissed the case with prejudice.[3]

And that contention has merit. Because trial on the petition had not commenced (indeed, the December 9, 2014 hearing was supposed to be a trial setting conference), Rosenberg had the right to voluntarily dismiss his petition with or without prejudice.

---

[3]       For example, Rosenberg argues, "To dismiss a case with prejudice regarding the five-year limitation requires [a] hearing." There was, however, no motion or order to show cause under section 583.310, and the court did not dismiss Rosenberg's petition under the five-year statute. Rosenberg also suggests that the court's order deprived him of an evidentiary hearing, but he appears to be arguing that, because the dismissal with prejudice was "on the merits," it will preclude him from having an evidentiary hearing in connection with any future claims he may bring.

5

Doc# 1 Page# 8 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

(See § 581, subds. (b)(1), (c); *Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199, 1209; *Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp.* (2009) 174 Cal.App.4th 67, 75; *Gogri v. Jack In The Box Inc.* (2008) 166 Cal.App.4th 255, 261.) The transcript of the January 20, 2015 hearing reflects that Rosenberg communicated, perhaps not as precisely as an attorney would have but nevertheless sufficiently, that he wanted his petition voluntarily dismissed without prejudice by trying to tell the court he wanted his case dismissed under section 583.310. Rosenberg apparently believed that a dismissal for failure to bring an action to trial within five years under section 583.310 is a dismissal without prejudice (see § 581, subd. (b)(4); *Ashworth v. Memorial Hospital* (1988) 206 Cal.App.3d 1046, 1053, 1063 & fn. 2), and he wanted the court to dismiss his petition pursuant to that statute. Rosenberg also made it clear that, although he wanted the court to dismiss his case, he was not finished litigating with his adversaries. He told counsel for OneWest Bank that he did not intend to go "silently into the night" and that he had many other causes of action he intended to bring. As Rosenberg puts it in his reply brief, he "did not ask for a dismissal with prejudice" and "made clear that he fully intended to continue to enforce his rights." Whether such causes of action are barred by applicable statutes of limitations and whether they state claims will be determined if and when Rosenberg ever brings those claims.

Moreover, Rosenberg never asked the court to dismiss his petition with prejudice. It was counsel for OneWest Bank who asked, after the court had dismissed the petition, whether the dismissal could be with prejudice. Although the court stated the dismissal was "pursuant to" Rosenberg's request, and OneWest Bank asserts on appeal Rosenberg "did not object to [its] additional request," Rosenberg tried, in the split-second he had, to object by starting to say that was not what he wanted and that he wanted the case dismissed under section 583.310. The court, however, perhaps in its haste to resolve the proceeding involving an indecisive, self-represented litigant who apparently had backed out of a settlement, interrupted Rosenberg and stated it would dismiss the petition with prejudice. But Rosenberg was entitled, as it appears he was trying to do, to dismiss his petition without prejudice. (See *Steffens v. Rowley* (1935) 10 Cal.App.2d 628, 630 [in a

6

plaintiff's appeal from an order of dismissal, the trial court erred in granting a motion to dismiss by adding "with prejudice" to the order of dismissal, and, "[w]hile the oral motion to dismiss might have been denied by the court [citation], it should not have been granted with prejudice over the objections of the [plaintiff]"].)

## DISPOSITION

The order of dismissal is reversed.  The matter is remanded with directions to vacate the order dismissing the petition with prejudice, and enter a new order dismissing the petition without prejudice.  The request for judicial notice is denied.  The parties are to bear their costs on appeal.


SEGAL, J.

We concur:


ZELON, Acting P. J.


GARNETT, J. *


---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7

84

Doc# 1 Page# 10 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - other

plaintiff's appeal from an order of dismissal, the trial court erred in granting a motion to dismiss by adding "with prejudice" to the order of dismissal, and, "[w]hile the oral motion to dismiss might have been denied by the court [citation], it should not have been granted with prejudice over the objections of the [plaintiff]"].)

## DISPOSITION

The order of dismissal is reversed.  The matter is remanded with directions to vacate the order dismissing the petition with prejudice, and enter a new order dismissing the petition without prejudice.  The request for judicial notice is denied.  The parties are to bear their costs on appeal.


SEGAL, J.

We concur:


ZELON, Acting P. J.


GARNETT, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7

Doc# 1 Page# 10 - Doc ID = 1681412057 - Doc Type = Appeal - Remittitur - Other

1  Robert Garrett, SBN 65886
   rgarrett@garrett-tully.com
2  Tomas A. Ortiz, SBN 188873
   tortiz@garrett-tully.com
3  GARRETT & TULLY, P.C.
   225 S. Lake Ave., Suite 1400
4  Pasadena, California 91101-4869
   Telephone: (626) 577-9500
5  Facsimile: (626) 577-0813

6  Attorneys for Defendant Deutsche Bank
   National Trust Company, as Trustee for
7  Alliance Bancorp Mortgage Backed Pass-
   Through Certificate Series 2007-OA1

8

9              UNITED STATES BANKRUPTCY COURT

10    CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

11

12  In re                          │  Case No. 1:17-bk-11748-VK

13  STEVEN MARK ROSENBERG,          │  Chapter 7

14         Debtor.                  │  Adv No. 1:17-ap-01096-VK

15  ─────────────────────────       │  NOTICE BY DEFENDANT
                                       DEUTSCHE BANK NATIONAL
16  STEVEN MARK ROSENBERG,          │  TRUST COMPANY, AS TRUSTEE
                                       FOR ALLIANCE BANCORP
17         Plaintiff,               │  MORTGAGE BACKED PASS-
                                       THROUGH CERTIFICATE SERIES
18         vs.                      │  2007-OA1 OF JOINDER AND
                                       JOINDER IN MOTION FOR
19  ALLIANCE BANCORP, INC (Estate), │  JUDGMENT ON THE PLEADINGS
    MORTGAGE ELECTRONIC                BY DEFENDANTS OCWEN LOAN
20  REGISTRATION SYSTEMS, INC.,     │  SERVICING, LLC AND
    OCWEN LOAN SERVICING, ONE          MORTGAGE ELECTRONIC
21  WEST BANK, DEUTSCHE BANK        │  REGISTRATION SYSTEMS, INC.
    NATIONAL TRUST COMPANY, AS
22  TRUSTEE FOR ALLIANCE            │  Date:  April 4, 2018
    BANCORP MORTGAGE BACKED           Time:  2:30 p.m.
23  PASS-THROUGH CERTIFICATE        │  Crtrm: 301
    SERIES 2007-OA1 AND DOES 1
24  THROUGH 25, INCLUSIVE,          │

25         Defendants.              │

26

27

28                                     1              Case No. 1:17-ap-01096-VK
    ───────────────────────────────────────────────────────────────────────
    NOTICE OF JOINDER BY DEUTSCHE BANK NATIONAL TRUST COMPANY
                TO MOTION FOR JUDGMENT ON THE PLEADINGS

GARRETT & TULLY
A PROFESSIONAL CORPORATION

1  **TO THE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF**

2  **RECORD:**

3      **PLEASE TAKE NOTE THAT** defendant Deutsche Bank National Trust

4  Company, as Trustee for Alliance Bancorp Mortgage Backed Pass-Through

5  Certificate Series 2007-OA1 ("Deutsche Bank") hereby joins in the Notice and

6  Motion for Judgment on the Pleadings filed by defendants Ocwen Loan Servicing,

7  LLC ("Ocwen") and Mortgage Electronic Registration Systems, Inc. ("MERS") on

8  February 13, 2018 and February 15, 2018, and each of the arguments and authorities

9  found therein. (See, Dkt. Nos. 15, 16, 17 and 19.) Deutsche Bank also joins in the

10  Request for Judicial Notice filed in support of Motion for Judgment on the Pleadings.

11  (Dkt. No. 17.)

12      Since this is not a core matter under 28 U.S.C. § 157, Deutsche Bank does not

13  consent to the entry of final orders or judgments by the bankruptcy judge. (See, Fed.

14  R. Bankr. P. 7012(b).)

15      By way of this adversary proceeding, plaintiff Steven Mark Rosenberg

16  ("Rosenberg") seeks damages and declaratory relief in connection with the deed of

17  trust, recorded on March 15, 2007 as instrument number 2007-0575007, ("March

18  2007 DOT") and securing a $390,000 promissory note on a $390,000 loan made to

19  Rosenberg's father (the "Loan").[1] (Dkt. 1, Complaint, p. 9.) Deutsche Bank is the

20  current beneficiary of the loan secured by the March 2007 DOT.

21      Rosenberg's allegations against Deutsche Bank are identical to the allegations

22  Rosenberg has asserted against Ocwen and MERS. As with his allegations against

23  Ocwen and MERS, Rosenberg's allegations against Deutsche Bank arise from the

24  March 2007 DOT and arise from the same conduct Rosenberg attributes to Ocwen

25  and MERS.

26

27  [1] There is no dispute by Rosenberg that the Loan was in fact funded. The Loan was used by
Rosenberg's father to pay off an existing mortgage in the amount of $361,288.97, $26,821.84 in

28  credit card debt, $385.93 in unpaid property taxes, and $711.00 in fire insurance premiums.

GARRETT & TULLY
A PROFESSIONAL CORPORATION

2          Case No. 1:17-ap-01096-VK
NOTICE OF JOINDER BY DEUTSCHE BANK NATIONAL TRUST COMPANY
TO MOTION FOR JUDGMENT ON THE PLEADINGS

288393

1    Rosenberg's allegations of a "violation of 11 U.S.C. § 524(a)(2)" as asserted

2   by Rosenberg in his first claim for relief against Deutsche Bank are identical to the

3   allegations asserted against Ocwen and MERS under the same claim for relief. (Dkt.

4   1, Complaint, paras. 61-64.) Accordingly, the allegations are deficient for the same

5   reasons set forth in Ocwen and MERS' motion for judgment on the pleadings. (Dkt.

6   16, Motion, p. 7-8.)

7    Rosenberg's allegations of a purported "violation of FRBP, Rule 3001" as

8   asserted by Rosenberg in his second claim for relief against Deutsche Bank are

9   identical to the allegations asserted against Ocwen and MERS under the same claim

10   for relief. (Dkt. 1, Complaint, paras. 66-67.) Accordingly, the allegations are deficient

11   for the same reasons set forth in Ocwen and MERS' motion for judgment on the

12   pleadings. (Dkt. 16, Motion, p. 8-10.)

13    Rosenberg's allegations of a purported "violation of FRBP, Rule 3001" as

14   asserted by Rosenberg in his third claim for relief against Deutsche Bank are identical

15   to the allegations asserted against Ocwen and MERS under the same claim for relief.

16   (Dkt. 1, Complaint, paras. 69-70.) Accordingly, the allegations are deficient for the

17   same reasons set forth in Ocwen and MERS' motion for judgment on the pleadings.

18   (Dkt. 16, Motion, p. 8-10.)

19    Rosenberg's allegations of "fraudulent concealment" as asserted by Rosenberg

20   in his fourth claim for relief against Deutsche Bank are identical to the allegations

21   asserted against Ocwen and MERS under the same claim for relief. (Dkt. 1,

22   Complaint, paras. 72-74.) Accordingly, the allegations are deficient for the same

23   reasons set forth in Ocwen and MERS' motion for judgment on the pleadings. (Dkt.

24   16, Motion, p. 10-14.)

25    Rosenberg's allegations of a purported "violation of 18 U.S.C. § 157" as

26   asserted by Rosenberg in his fifth claim for relief against Deutsche Bank are identical

27   to the allegations asserted against Ocwen and MERS under the same claim for relief.

28   (Dkt. 1, Complaint, paras. 76-78.) Accordingly, the allegations are deficient for the

GARRETT & TULLY
A PROFESSIONAL CORPORATION

3                                                    Case No. 1:17-ap-01096-VK
NOTICE OF JOINDER BY DEUTSCHE BANK NATIONAL TRUST COMPANY
TO MOTION FOR JUDGMENT ON THE PLEADINGS

1 same reasons set forth in Ocwen and MERS' motion for judgment on the pleadings.

2 (Dkt. 16, Motion, p. 10-14.)

3      Rosenberg's allegations in support of his claim for declaratory relief as asserted

4 by Rosenberg in his fifth claim for relief against Deutsche Bank are identical to the

5 allegations asserted against Ocwen and MERS under the same claim for relief. (Dkt.

6 1, Complaint, paras. 80-85.) Accordingly, the allegations are deficient for the same

7 reasons set forth in Ocwen and MERS' motion for judgment on the pleadings. (Dkt.

8 16, Motion, p. 14-15.)

9      Lastly, as set forth in Ocwen and MERS' motion for judgment on the pleadings,

10 Rosenberg's claims of forgery, cancellation or rescission against the March 2007

11 DOT are time barred. (Dkt. 16, Motion, p. 5-7.) This adversary proceeding was filed

12 against Deutsche Bank and others long after the prescribed four-year statute of

13 limitations expired. These claims are time-barred as against Deutsche Bank as they

14 are against Ocwen and MERS. Accordingly, Rosenberg's claims are subject to

15 dismissal and Deutsche Bank is entitled to judgment in its favor on those claims.

16      For the reasons stated above, and for all the reasons stated in Ocwen and

17 MERS' motion for judgment on the pleadings, Deutsche Bank respectfully requests

18 that this Court grant Ocwen and MERS' motion for judgment on the pleadings, and

19 dismiss Rosenberg's complaint, and each of its asserted claims for relief, with

20 prejudice as to Ocwen, MERS, and Deutsche Bank.

21 DATED: March 9, 2018     GARRETT & TULLY, P.C.

22      Robert Garrett
     Tomas A. Ortiz

23

24

25      TOMAS A. ORTIZ

26      Attorneys for Defendant Deutsche Bank National Trust
     Company, as Trustee for Alliance Bancorp Mortgage

27      Backed Pass-Through Certificate Series 2007-OA1

28

GARRETT & TULLY
A PROFESSIONAL CORPORATION

288398

4      Case No. 1:17-ap-01096-VK
NOTICE OF JOINDER BY DEUTSCHE BANK NATIONAL TRUST COMPANY
TO MOTION FOR JUDGMENT ON THE PLEADINGS

Case 1:17-ap-01096-VK    Doc 26    Filed 03/12/18    Entered 03/12/18 16:50:10    Desc
Main Document    Page 5 of 5

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
225 S. Lake Avenue, Suite 1400 Pasadena, CA 91101

A true and correct copy of the foregoing document entitled (specify): **NOTICE BY DEFENDANT DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ALLIANCE BANCORP MORTGAGE BACKED PASS-THROUGH CERTIFICATE SERIES 2007-OA1 OF JOINDER AND JOINDER IN MOTION FOR JUDGMENT ON THE PLEADINGS BY DEFENDANTS OCWEN LOAN SERVICING, LLC AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **3/9/18**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Amy L. Goldman (TR) marisol.jaramillo@lewisbrisbois.com; AGoldman@iq7technology.com; ustpregion16.wh.ecf@usdoj.gov; Marvin Adviento, Lukasz I. Wozniak, Def. Alliance Bancorp, Inc, Deutsche Bank Natl. Trust Co. as Trustee for Alliance Bancorp Mortgage Backed Pass-Through Certificate Series 2007-OAO1, Mortgage Electronic Registration Systems; Ocwen LLC; madivento@wrightlegal.net; mjohnson@wrightlegal.net; Lwozniak@wrightlegal.net

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (date) 3/9/18, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Steven Mark Rosenberg
106-1/2 Judge John Aiso St., #225
Los Angeles, CA 90012

U.S. Trustee (SV)
915 Wilshire Blvd, Ste 1850
Los Angeles, CA 90017

One West Bank
888 East Walnut St.
Pasadena, CA 91101

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 3/9/18, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Victoria S. Kaufman
United States Bankruptcy Court - Central District of California
21041 Burbank Blvd, Suite 354 / Courtroom 301
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/9/18 | Delorise Cameron | /s/ Delorise Cameron |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

1  Steven Mark Rosenberg
2  106 ½ Judge John Aiso St,
   #225
3  LA, CA 90012
   Tel:  310-971-5037
4  Email: Founder@PuttingElders1st.org
   In Pro Per, Plaintiff
5

**FILED**

MAR 2 1 2018

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

6

7            **UNITED STATES DISTRICT COURT**

8            **CENTRAL DISTRICT OF CALIFORNIA**

9

10 STEVEN MARK ROSENBERG          )
                                  )
11 Debtor                         ) **Bankruptcy Case No. 1:17-bk-11748-VK**
                                  )
12                                ) **Chapter 7**
                                  )
13                                ) **Adversary Case No. 1:17-ap-01096-VK**
                                  )
14 STEVEN MARK ROSENBERG          ) **MEMORANDUM OF POINTS AND**
                                  ) **AUTHORITIES IN SUPPORT OF**
15 Plaintiff                      ) **THE OPPOSITION TO**
16     vs.                        ) **DEFENDANTS' MOTION FOR**
                                  ) **JUDGMENT ON THE**
17 ALLIANCE BANCORP (Estate),MORTGAGE ) **PLEADINGS**
18 ELECTRONIC REGISTRATION SYSTEMS ; )
   OCWEN LOAN SERVICING, ONEWEST   )
19 BANK, DEUTSCHE BANK NATIONAL    )
   TRUST COMPANY, AS TRUSTEE FOR   ) **Hearing:**
20 ALLIANCE BANCORP MORTGAGE       )
   BACKED PASS-THROUGH CERTIFICATE ) **Date:** 4/8/18
21 SERIES 2007-OA1 AND DOES 1 THROUGH ) **Time:** 2:30 pm
   25, INCLUSIVE,                  ) **Place:** Court Room 301
22                                 )        2 1041 Burbank Blvd
23 Defendants                            WH, CA 91367

24

25

26

27

28

Page 1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

1

## TABLE OF CONTENTS

1. INTRODUCTION ................................................................ 6

2. STANDARD OF REVIEW.................................................... 6-7

3. ARGUMENTS......................................................................7-21

   I. ALL OF PLAINTIFFS' CLAIMS ARE PROPERLY STATED
      IN THE ADVERSARY PROCEEDING ............................... 7-15

   A.CLAIMS OF FORGERY, FRAUD AGAINST DEFENDANTS
     IS WITHIN THE TIME PERIOD ...................................... 7-8

   B.PLAINTIFF'S ALLEGATIONS WITH REGARD TO FORGERY,
     FRAUD CONCEALMENT ARE SPECIFIC ..................... 8-12

   C.PLAINTIFF CAN CHALLENGE THE ASSIGNMENTS
     ON THE DOT ....................................................... 12-13

   D.PLAINTIFF'S CLAIM WITH REGARD TO VOID ASSIGNMENT
     IS SUFFICIENTLY PLEADED.................................... 13-15

   II.    MOTION FOR JUDGMENT ON PLEADINGS CONSTITUTES
       ESTOPPEL ......................................................... 15-21

   A. DEFENDANTS ADMITS ALL FACTS AND ALLEGATIONS
     OF THE PLAINTIFF............................................... 15-18

   B.DEFENDANTS DO NOT EXPRESSLY DENY FRAUD
     COMMITTED........................................................ 18-19

   III.   INITIATION OF DISCOVERY PROCEEDING INVALIDATES
      THE MOTION FOR JUDGEMENT ON PLEADING................. 19-20

Page 2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

2

IV.   341 MEETING IS MANDATORY FOR A BANKRUPTCY
      PROCEEDING ................................................................... 20-21

V.    EVEN IF THE MOTION IS GRANTED, PLAINTIFF SHOULD BE
      ALLOWED LEAVE TO AMEND THE COMPLAINT TO
      CORRECT DEFICIENCIES.................................................... 21

4. CONCLUSION................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Bettencourt v. Hennessy Industries, Inc.*
(2012) 205 Cal.App.4th 1103, 1106................................................ 7

*Civic Partners Stockton, LLC v. Youssefi*
(2013) 218 Cal.App.4th 1005, 1012-1013....................................... 7

*Angelucci v. Century Supper Club*
(2007) 41 Cal.4th 160, 166............................................................ 7

*Collier v. Superior Court*
(1991) 228 Cal.App.3d 1117, 1120.............................................. 7

*Cf. Castaneda v. Department of Corrections & Rehabilitation*
(2013) 212 Cal.App.4th 1051, 1060............................................. 7

*Everett v. State Farm General Ins. Co.*
(2008) 162 Cal.App.4th 649, 655................................................. 7

*Zhang v. Superior Court*
(2013) 57 Cal.4th 364, 370..........................................................

*Indymac Bank FSB v. Bentley*
(2014) NY Slip Op 50256(U) ................................................. 11  18

*Orcilla v. Big Sur, Inc.*
(Feb. 11, 2016) __ Cal. App.4th __                                          11

*Royal Primo Corp. v. Whitewater W. Indus*
Case No. 15-cv-04391-JCS, Ltd, 2016 WL 467467....................... 14

*United States v. Hempfling*
431 F. Supp. 2d 1069, 1076 (E.D. Cal. 2006)............................. 14

*Hargrove & Constanzo v. C.I.R.*
240 F.R.D. 652, 658 (E.D. Cal. 2006)........................................ 14

*In re Mortgages Ltd.*
771 F. 3d 623............................................................................ 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

4

1

2  *Yvanova v. New Century Mortgage Corp*
Case No. S218973 (Cal. Sup. Ct. February 18, 2016)............................ 15

3

4  *Ragsdale v. Kennedy*
286 N.C. 130, 209 S.E.2d 494 (1974)......................................... 19

5  *Juster Associates v. City of Rutland, Vt.*
6  901 F.2d 266, 269 (2rd Cir. 1990)............................................ 20

7  *Sunset Mortgage Company, L.P. v. Lexington Fayette*
*Urban County Human Rights Commission*
8  No. 2005-CA-002581-MR (Ky. App. 4/6/2007) (Ky. App., 2007)............. 20

9

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*
10  386 F.3d 581, 588 (2004)................................................... 20

11

*Walker  v. Liberty Mut. Ins. Co.*
12  No. 4:16-CV-01388-RBH, 2017 WL 1020884............................... 20

13  *Smurfit-Stone Container Enterprises, Inc. v. Nat'l*
*Interstate Ins. Co.,*
14  No. 3:08CV093-HEH, 2008 WL 4153762................................... 20

15

16  **U.S CONSTITUTION**

17  U. S. Const. art. XIV , § 1................................................. 25

18  **Statutes**

19

**California Civil Code**
20  § 1213 ................................................................... 11
21  § 3412................................................................... 17

22

Civil Procedure Code
23      §438(c)(1)(B............................................................ 7
         § 337 ............................................................... 22
24  Civil Procedure before Trial (2006)
25      §7...................................................................... 7
         §275.................................................................. 7

26

27

28

Page 5
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

5

228

Federal Rules of Civil Procedure
       Rule 9(b).................................................................
       Rule 11..................................................................     19, 20
       Rule 12 (c)............................................................
       Rule 15(a)(2).........................................................        20
       Rule 26..................................................................
       Rule 20..................................................................

Probate Code
       § 850............................................................................ 7,8,9,10,18

United States Bankruptcy Code

U.S. Code › Title 11 › Chapter 3 › Subchapter III › § 341 MEETING ......

Local Bankruptcy Rules (LBR)
LBR 7016-1. STATUS CONFERENCE....................................................   24

**Books/Publications**
Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure,
s. 1367(3d ed. 1998)................................................................
Wright and Miller et al., Federal Practice and
Procedure § 1370 (3d ed.)........................................................
U.S. Department of Justice, Executive Office For Chapter 7 Trustees, Effective
October 1, 2012........................................................................   26

**EXHBITS:** .....................................................................
                                                            #1 .. 29
                                                         # 2 .-- 37
                                                         #3 . . . . 40

1.

## INTRODUCTION

The Plaintiff had filed the adversary proceeding in November 27, 2017 to challenge among other causes of action the wrongful non judicial foreclosure (e.g. concealment & fraud) of the Estate property situated at 15814 Septo Street, North Hills, California 91343. It is in this very adversary proceeding that the Defendants have filed the motion for judgment on pleadings to determine the case on a

Page 6
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS
6

229

1  question of law, claiming insufficiency of claims and pleadings by the Plaintiff in
2  the adversary proceeding.

## 2.
## STANDARD OF REVIEW

As Defendants note, a motion for judgment on the pleadings is decided on much the same basis as a general demurrer. (Defendants' P&As at p. 3; Code of Civil Procedure §438(c)(1)(B); Weil & Brown, Civil Procedure Before Trial (2006) §7:275; *Civic Partners Stockton, LLC v. Youssefi (2013) 218 Cal.App.4th 1005, 1012-1013.*) As with a demurrer, the court must assume the truth of all facts properly alleged in the complaint, (*Angelucci v. Century Supper Club (2007) 41 Cal.4th 160, 166*), regardless of any difficulty there might be in actually proving their truth at trial (*see Collier v. Superior Court (1991) 228 Cal.App.3d 1117, 1120* [stating that the standard applies in considering a demurrer]).

A motion for judgment on the pleadings must be denied if the facts alleged in the complaint state a viable cause of action under any legal theory. (*Cf. Castaneda v. Department of Corrections & Rehabilitation (2013) 212 Cal.App.4th 1051, 1060; Zhang v. Superior Court (2013) 57 Cal.4th 364, 370 [stating the same standard for a demurrer].*) If a motion for judgment on the pleadings is granted, *it should generally be granted with leave to amend, so long as there is a reasonable* possibility that the deficiencies identified by the court can be cured by amendment. In such cases it is error for the court to refuse to grant leave to amend. (*Bettencourt v. Hennessy Industries, Inc. (2012) 205 Cal.App.4th 1103, 1006; Everett v. State Farm General Ins. Co. (2008) 162 Cal.App.4th 649, 655.*)

## 3.
## ARGUMENTS

### I.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

# ALL OF PLAINTIFFS' CLAIMS ARE PROPERLY STATED IN THE ADVERSARY PROCEEDING

## A.
## CLAIMS OF FORGERY, FRAUD AGAINST DEFENDANTS IS WITHIN THE TIME PERIOD

One of the main contentions of the Defendants in the Motion for judgment on pleadings is that the claims of the Plaintiff in the adversary pleading before this Court are time barred. They base their contention on the fact the Plaintiff has not initiated a case of forgery or fraud within the statutory period of three years as required by the Statute of Limitations.

The allegations of the Defendant that the Plaintiff's claims are time barred are false and not supported by law. The forgery with regard to the signature of Isadore Rosenberg creating the alleged Deed of Trust (hereinafter referred to as 'DoT') on the Estate Property located at 15814 Septo Street, North Hills, California 91343 (hereinafter referred to as 'Estate Property') came to be known to the Plaintiff only after the death of the Plaintiff's father's i.e. Isadore Rosenberg's death in 2008. In pursuance to the same, the Plaintiff on realizing that the alleged DoT was not executed by his father, Isadore Rosenberg, had filed a petition as per Section 850 of the Probate Code as administrator and trustee of the estate of Isadore Rosenberg to determine title to real property where someone other than the decedent or trustor claims to have title to or an interest in the property before the Superior Court of Los Angeles County, and for forgery as the signature of the key document was forged by a unscrupulous criminal caregiver of Isadore Rosenberg. However, in 2015 after just over five years of defendant driven protracted litigation, the case was dismissed with prejudice to which the Plaintiff had filed an appeal that ordered the Lower Court to provide the Plaintiff dismissal of case without prejudice. The Plaintiff then filed the Adversary proceeding in November 27, 2017 as a continuation to the litigation that was initiated in 2009. The opposition make a bald face statement when they state a lapse of two years ensued from the time of reversal: Only 11 months had past since the time of that ruling to the filing of the

Page 8
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

8

231

1   present action, NOT TWO years as indicated in their compliant.  In any event, the

2   Plaintiff had made the first allegation with regard to forgery and fraud against the

3   Defendants on or around August 27, 2009 which was well within the time period of

4   initiating a case. Similarly, the limitation of 3 years, with regard to initiating fresh

5   proceedings would start from the day on which the Plaintiff's Probate case was

6   dismissed without prejudice by the lower court; that dismissal date being January

    19, 2017 (Remittitur Hearing- LASC BP109162).

7       The opposition makes a bald face patently false statement when they state

8   in their motion, a lapse of two years ensued from the time of reversal: Only 11

9   months had passed since the time of that ruling to the filing of the present action,

10   not over two  (2) years as indicated in their motion.  During the Appeal a stay was

11   in effect.

12       This adversary proceeding alleging forgery and fraud with regard to the

13   alleged DoT against the Defendants was initiated in November 27, 2017 which is

14   well within the time period stipulated and the adversary proceeding can be

15   considered as a continuation to the proceedings initiated by the Plaintiff against

16   the Defendants based on the forgery and fraud involved in the alleged DoT through

17   which the Defendants are attempting to assert rights on the property to which the

    Plaintiff alone is legally entitled.

18       Thus, the Plaintiff asserts that the claim of the Defendant that the

19   Adversary proceeding be dismissed on the ground that the claim of forgery and

20   fraud was alleged after the period of limitation is baseless and the same cannot be

21   considered.

**B.**

**PLAINTIFF'S ALLEGATIONS WITH REGARD TO FORGERY,**

**FRAUD CONCEALMENT ARE SPECIFIC**

27       The Defendants in their Motion for Judgment on Pleadings claims that the

28   Plaintiff in the adversary proceeding has made only vague allegations with regard

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

9

to forgery, fraud and concealment by the Defendants and therefore the Defendants have demanded striking off the pleadings as the case of the Plaintiff has no merits and is not sufficiently pleaded.

However, the Plaintiff has _made_ specific allegations and pleaded the facts in detail with regard to the forgery, fraud and concealment by the Defendants. The Plaintiff had clearly stated that the alleged DoT was not signed by Isadore Rosenberg and on realization of the same had filed a case as per Section 850 of the Probate Code for declaratory relief to declare that the Plaintiff alone was the rightful and legal owner of the Estate property. The Plaintiff had stated that Isadore Rosenberg (1918-2008) was ill and had attained old age when the alleged DoT was executed in 2007. The execution of the alleged DoT led to the creation of $390,000 debt (based entirely on fraud) being wrongly recorded on the Estate property. The Plaintiff came to know about such DoT only upon the death of his father, Isadore Rosenberg. On examination of the documents the Plaintiff realized that on March 15, 2007, an alleged DoT securing a $390,000 promissory note was recorded against the Real property located at 15814 Septo Street, North Hills, California 91343 indicating Ampro Mortgage, a division of United Finance Mortgage Corp ("Alliance Bancorp, Inc") as the lender and MERS acting solely as a nominee for the lender and the lender's successors and assigns was the purported beneficiary under deed of trust. The trustor of the note and the March 15, 2007 DOT was indicated as deceased Isadore Rosenberg.

Furthermore red flags went off in the Plaintiff mind, upon coming across a Grant Deed transferring 15814 Septo Street, North Hills Area, CA from the Isadore & Norma Rosenberg Trust, May 03 1994 , into the vesting as Isadore Rosenberg as Widow. The retained Hand Writing Expert of the Plaintiff indicates specifically among others associated forged transaction documents that the signature attached to that sudden change of Grant Deed vesting recital is a forgery as well and not that of Isadore Rosenberg. A true and correct copy of the Forensic Handwriting Expert Report is attached and incorporated by reference to this petition as "Exhibit -1".

10

1    Along with above fraudulent conveyance, a very suspect- Notice of
2    Abandonment of Homestead Declaration was recorded in the County Recorder
3    Grantee-Grantor Index a short time around the March 15, 2007 recording of the
4    Dot as well. The plaintiff ascertained the elder Rosenberg, giving up his recorded
5    protective Homestead Declaration did not seem to be a reasonable and prudent
6    action on the part of 87 year of Isadore Rosenberg to take on his own volition.

The Plaintiff also  came to realize as a result of logging approximately one hour on
7    County of Los Angeles, Norwalk Recorder   Offices official computers over the
8    course of  several terminal usage sessions (*Note: Plaintiff in early 1990's had stint*
9    *as  Title Examiner with the City of Los Angeles, Real Estate Division, Bureau of*
10   *Engineering*  at said heretofore location,  indicating the alleged DOT had been
11   further assigned by two assignments and a correction assignment; the first
12   Assignment purports to have been made on April 16, 2008 (though not
13   acknowledged until August 2008). The second assignment purports to have been
14   made simultaneously with the first assignment as of April 16, 2008 at 7:55 am
15   although it is not acknowledged until 2009 and recorded in 2010. The correction
16   assignment had been Robo Signed by Jon Dickerson on behalf of FDIC. (See
17   Exhibit 8 in Adversary Proceeding/ hereby incorporated by reference as well as
18   Notice of Errata for Exhibit 3 indicated as Docket Pacer # Doc 5 Filed 12/15/17
19   Page 4 of 6, likewise hereby incorporated by reference. It should be noted the
20   following case holding that relates to **California Civil Code § 1213:** Recording a
21   conveyance as constructive notice to subsequent purchasers and mortgages; it
22   was held in **Los Angeles v Morgan (1951) 105 CA 2d 726, 234 P2d 319** that
23   where invalid documents are recorded *they do not give constructive notice.*

The following recent case is provided to refute the cited cases in the Motion for
24   Judgment on the Pleadings as found on page 12 Lines 3 to 12"

25   **Orcilla v. Big Sur, Inc. (Feb. 11, 2016) __ Cal. App.4th __**
26   It is contended that a $390,000 "loan" to a mental impaired 87-year-old whose
27   income was only a fixed pension, is unconscionable. Under that pattern there is a
28   duty of care established by the financial entity.

Refer to: Pacer DOCKET #499 & Docket #499-1

Case # 07-10943-CSS Filed 7/24/17/ Alliance Bancorp Chapter 7 BK

(Exhibits in the Alliance Bancorp Bankruptcy  going into detail why at the very inception- 15814 Septo Street, North Hills Area, CA  **was never transferred into the Mortgage Backed Security at all!**

Plaintiff makes such informed statement as to belief based on class lectures and course materials from their USC Advanced Real Estate Analysis Class (FBE 570).

     The purported recorded chain of title Assignments were in the name of Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as 'MERS') as nominee for Ampro Mortgage, a division of United Finance Mortgage Corp. By the time of the purported assignment the party on whose behalf MERS purported to act, had filed petition in Bankruptcy, Chapter 7 on July 13, 2007, and was voluntarily dissolved in Illinois, its State of Incorporation on February 1, 2008 as Case No. 07-10941 (CSS).

     The Plaintiff had on understanding that his 88 year old father would not have executed of free will, the present contested DoT.

     Based on the   examination of the County Recorder documents associated with regard to the DoT, Plaintiff subsequently filed the case under Section 850 of the Probate Code to declare himself as the sole owner of the Estate Property, based on both the *pour over Will* indicating such inheritance and Trust document (designating Plaintiff as the remainder beneficiary of the living trust) of the deceased. As previously noted- In pursuance to such case, the Plaintiff had sought the help of a forensic handwriting expert, Howard Rile, who produced the report that the signatures in the DoT and all related endorsements were forged and the Plaintiff had also stated that the then care taker of Isadore Rosenberg, David Curtis Harder was behind the forging of the signatures.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

12

1  The Plaintiff had also asserted that the Defendants had a role to play with regard

2  to such forging and fraudulent aspects with regard to the various documents and

3  endorsements of the DoT because they contend are the holders of the instrument

4  and had abetted the caregiver in all his activities with regard to forging of the

5  documents. It can also be seen that the Defendants had involvement in the illegal

6  ("robosigning" becoming illegal practice -2011 & forward by order of the Office of

7  Currency & Comptroller as well as the State of California under the 2013

   introduced statutes as found at: https://oag.ca.gov/hbor

8

9  Note:  This Honorable Court should find it appalling that within the RFN in

10 conjunction with the Motion for Judgment on the Pleadings, damning fabricated

11 documents that were the basis for such Government intervention are being passed

12 off as being authenticated knowing full well lack of verification  and legitimately to

13 this court. Plaintiff prays the proverbial wool is not pulled over the court eyes. The

14 opposition continues to make non-supported assumptive statements throughout

15 their filing:  Example:  MFJP Page 8 Lines 16-17. *Here, the Deed of Trust is a*

16 *perfected security interest in the Property, which passed  through the bankruptcy*
   *unaffected.*

17 In the Schedule, Plaintiffs  attorney in the main Case, Charles Shamash, Counsel

18 at Law, who prepared the schedules after lengthy consultation- put this above

19 Deed of Trust   lien as disputed  and indicating contingence designation along with

20 a short explanation on the Schedule that an action such as present was planned to

21 be filed.

22 The Defendants have never provided any expert opinion or proof to refute the

23 contention of the Plaintiff that the signatures in the DoT were forged. The only

24 claim of the Defendants is that the Plaintiff filed the case of forgery and fraud after

25 the period of limitation. Similarly, in the Motion for judgment on pleadings the
   Defendants do not have a contention that they were not involved in the forgery,

26 their only stand is that the Plaintiff had not specifically alleged with regard to who

27

28

Page 13
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

13

among the officers, acting in what capacity led the Plaintiff's father to execute the DoT and related documents.

The Plaintiff humbly submits that since the said forgery and fraud was committed just over ten years ago, and the real person who was defrauded was Isadore Rosenberg, who is no more and considering the fact that the Plaintiff knew about such fraudulent and forged DoT only after the death of his father, it impossible for the Plaintiff to specifically allege with regard to the officers of the Defendants who acted in a fraudulent manner.

Rule 9(b) of the Federal Rules of Civil Procedure (hereinafter referred to as 'FRCP') sets a heightened pleading standard for claims based on fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. However, it has been held that, where the alleged fraud occurred over a long period of time, "Rule 9(b)'s particularity requirement is less stringently applied." (*See Royal Primo Corp. v. Whitewater W. Indus, Case No. 15-cv-04391-JCS , Ltd, United States v. Hempfling, 431 F. Supp. 2d 1069, 1076 (/case/us-v-hempfling-3#p1076) (E.D. Cal. 2006); see also Hargrove & Constanzo v. C.I.R., 240 F.R.D. 652, 658 (/case/hargrove-constanzo-v-cir#p658) (E.D. Cal. 2006).*

Thus, the claim of the Plaintiff alleging fraud against the Defendants, being of an incident as early as 2007, would attract leniency and therefore the ground of the Defendants that the claims of fraud and concealment by the Plaintiff are not specific with regard to when, who and where ingredients do not stand ground.

Further, Rule 11 of FRCP after the 1983 amendment provides that, "absent a finding of bad faith, factual allegations in the complaint (or answer) must be tested through the normal mechanisms for adjudicating the merits."

1    This has been reiterated in **In re Mortgages Ltd., 771 F. 3d 623** wherein

2   the Ninth Circuit Court held that the *Court must look into the pleadings in detail*

3   *before striking them off* (emphasis added).

4   In other words, the Court cannot blatantly reject pleadings without providing

5   sufficient reasons for striking off the facts.

6    Thus, the allegations of forgery and fraud against the Defendants are

7   specific and sufficient to claim the reliefs sought for by the Plaintiff in the

8   Adversary proceedings.

**C.**

9   **PLAINTIFF CAN CHALLENGE THE ASSIGNMENTS ON THE DOT**

10    The Defendants have in their Motion for judgment on pleadings stated that

11   the Plaintiff does not have the standing to challenge the assignments because the

12   Plaintiff nor his father, Isadore Rosenberg are parties to the assignment. This is

13   because the so called alleged assignments have been done between the various

14   Defendants who act as trustees/ beneficiaries and regardless of change of the

15   person, the borrower/trustor is liable to pay.

16

17    However, this claim of the Defendant that the Plaintiff does not have

18   standing is refuted and completely baseless. In **Yvanova v. New Century**

19   **Mortgage Corp, Case No. S218973 (Cal. Sup. Ct. February 18, 2016)**, "The

20   California Supreme Court held that a home loan borrower who has suffered a non-

21   judicial foreclosure has standing to sue for wrongful foreclosure based on an

22   allegedly void assignment even though she was in default on the loan and was not

23   a party to the challenged assignment because an allegation that the assignment

24   was void will support an action for wrongful foreclosure".

25    Thus, in the present case, the very claim of the Plaintiff is that the DoT in

26   itself is void abinitio, as it had been created by forgery and fraud by the caretaker

27   of Isadore Rosenberg, with the help of the Defendants. This being the fact pattern

28   the aforesaid rule that the Plaintiff would have standing to challenge assignment in

Page 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

15

1  case of void assignments is applicable in this case as the Plaintiff is an affected
2  party and has the standing to challenge a wrongfull foreclosure.

3

4  **D.**

5  **PLAINTIFF'S CLAIM WITH REGARD TO VOID ASSIGNMENT
IS SUFFICIENTLY PLEADED**

6

7     The Plaintiff has in the adversary pleading clearly stated as to why the
8  assignments are void ab initio. The fact that the DoT in itself along with its
9  endorsements and documents are forged renders the DoT void.

10     Further, the alleged DoT securing a $390,000 promissory note was
11  recorded against the Estate Property indicating Ampro Mortgage, a division of
12  United Finance Mortgage Corp ("Alliance Bancorp, Inc") as the lender and MERS
13  acting solely as a nominee for the lender and the lender's successors and assigns
14  was the beneficiary under deed of trust. The trustor of the note and the March 15,
15  2007 DOT was deceased Isadore Rosenberg.
16  The Lender under the DoT was contended to be Ampro Mortgage, a Division of
    United Financial Mortgage Corp which was an assumed name of Alliance Bancorp,
17  Inc. Alliance Bancorp, Inc filed a petition in Bankruptcy, Chapter 7 on July 13,
18  2007   and was involuntarily dissolved in Illinois, its State of Incorporation, on
19  February 1, 2008.
20     Further, as per the purported DoT, the closing date in the mortgage backed
21  security (MBS) prospectus was May 30, 2007. It is also stated in the DoT that the
22  Sponsor will convey the mortgage loans to the Depositor on the Closing Date and
23  the Depositor will convey the mortgage loans to the Issuing Entity on the Closing
24  date.
25     As per Section 10.02 of the Pooling and Service Agreement (PSA), the
26  Depositor, Master Servicer, Trustee or the Securities Administrator **shall not
    accept any contributions to the REMICs after the closing date.**
27
28

Page 16
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

16

1    REMIC is an entity enjoying special tax treatment and the defendants were

2  such entities that enjoyed benefits, required that the mortgages be purchased

3  within a 3-month period. The said property was never properly transferred to the

4  Trust as per the requirements of the PSA prospectus by the closing date. This

5  massive illegal tax dodge scheme has egregiously & determinately harmed the

6  "psyche" of the Plaintiff; given since 1975; has faithfully & dutifully filing & paying

7  taxes in a responsible manner.  The Plaintiff has a very strong moral compass as

8  evidenced by testifying at the sentencing of his former USC professor (Marshall

9  School of Business: FBE 570- Advanced Real Estate Analysis) who defrauded his

   former students and families of approximately $1,500,000. Exhibit 2  Page:3̲2̲-3̲9̲

10    In continuance of the family home equity conversion scheme, the alleged

11  DoT that supposedly encumbers the estate property and on later dates the two

12  purported assignments and the correction of Assignment recorded March 17, 2017

13  relied by the defendants have unexplained anomalies which collectively show these

14  recorded real estate documents to be ineffective and in violation of the California

15  Homeowner Bill of Rights relating to verification of documents prior to recording.

16    Quoting direct from the opposition pleading: *"On **December 14, 2017**, a*

   *corrective Assignment of Deed of Trust was recorded against the Property. [RJN, Ex*

17  *11]. The purpose of this corrective assignment was to add the execution date and to*

18  ***correct the assignor** on the Assignment recorded **on 8/12/2008** [RJN, Ex 5. [RJN,*

19  *Ex 11-p2, lines 10-12]"*

20  (emphasis added).

21  The plaintiff prays the Court does not have the wool pulled over their eyes as to

22  above!  Respectfully for the above contested document the Plaintiff is going on

23  record in opposition of this RJN, Ex. 5 given it is fatally flawed, (Statue of

24  Limitations Issue) and moreover December 13, 2018 is valid window of last day, to

25  file a cause of action for said slandering title instrument and complain that the

   above  instrument to be cancelled pursuant to: **California Civil Code 3412.**

26  There is unquestionably   a broken chain of title   that exists i.e.; the first

27  Assignment purports to have been made April 16, 2008 at 7:55 am. However, the

28

---

Page 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

17

purported Assignment is in the name of MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC AS NOMINEE FOR AMPRO MORTGAGE, A DIVISION OF UNITED FINANCIAL MORTGAGE CORP. By the time of the purported assignment the party on whose behalf MERS purported to act had filed a petition in bankruptcy and had been involuntarily dissolved. This in itself makes the assignment void.

Further, the first Assignment is signed by Laura Hescott, who is identified as a "Robo Signer" in *Indymac Bank FSB v. Bentley* (2014) NY Slip Op 50256(U)

The second Assignment purports to have been made simultaneously with the first Assignment as of April 16, 2008 and this was signed by Erica Johnson-Seck, also identified as a Robo signer. Both assignments were purportedly signed simultaneously; it would appear that neither of the defendants ever received any interest therein.

Thus, besides the ground that the DoT, endorsements and documents in itself are void ab initio on the ground of forgery and fraud committed by the Defendants, the assignments are void due to the missing chain of title links and furthermore the lack of authority of MERS to further assign the interest to another entity/person. This statement is based on the requirements in the California Homeowners Bill of Rights.

Note: MERS is listed as a creditor in the United Financial/Alliance Bancorp Bankruptcy- and it is well established that in order to have status in the MERS organization *membership dues* are to be up to date, in order to avail the financial entity access to the MERS platform and associated "benefits" of signing POA on their behalf. Nowhere in the United financial/Alliance Bancorp Bankruptcy docket exists any filings showing the Trustee sought to make such MERS membership payments. A detailed search was conducted of the Alliance Bancorp/United Financial/Ampro docket to support the last damning statement.

Page 18
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

18

1    Additional Discovery of MERS (specifically Deposition of Person Most

2  Knowledgeable) is needed to fully ascertain why assignments in the stream of

3  commerce for this property at 15814 Septo Street, North Hills "Area", CA 91343

4  are Void and not voidable, given the fact pattern as revealed by multiple fraudulent

5  and forged real estate documents going back to 2008.

6

7                                    II.

8                  **MOTION FOR JUDGMENT ON PLEADINGS**
                        **CONSTITUTES ESTOPPEL**

9

10                                   A.

11           **DEFENDANTS ADMITS ALL FACTS AND ALLEGATIONS**
                            **OF THE PLAINTIFF**

12

13

14    A motion for judgment as per Rule 12 (c) of FRCP may be instituted after

15  the pleadings are closed-but early enough not to delay trail. In ***Ragsdale v.***

16  ***Kennedy, 286 N.C. 130, 209 S.E.2d 494 (1974)***, it was observed that the motion

17  for judgment on the pleadings is the proper procedure when all of the material

    allegations of fact are admitted in the pleadings and only questions of law remain.

18

19    When the pleadings do not resolve all factual issues, judgment on the

20  pleadings is generally inappropriate. The motion for Judgment on pleadings only

21  has utility when all material allegations of fact are admitted or not controverted in

22  the pleadings and only questions of law remain to be decided. This means that

23  both parties agree to the facts put forth in the pleadings. Thereby, a motion for

24  Judgment on pleadings constitutes an Estoppel in itself on the party who initiates

25  the same.

26

    In considering motions under Rule 12(c) FRCP, courts frequently indicate

27  that a party moving for a judgment on the pleadings impliedly admits the truth of

28

its adversary's allegations and falsity of its own assertions that they have been denied by that adversary. (see also, *Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure, s 1367(3d ed. 1998)*; *accord Juster Associates v. City of Rutland, Vt., 901 F.2d 266, 269 (2nd Cir. 1990)*.

It was also stated that, 'For the purpose of this motion when a party moves for a judgment on pleadings he admits not only the trust of its adversary allegations but also the untruth of all his own allegations which have been denied by his adversary' *(see Sunset Mortgage Company, L.P. v. Lexington Fayette Urban County Human Rights Commission, No. 2005-CA-002581-MR (Ky. App. 4/6/2007) (Ky. App., 2007);* Wright and Miller et al., Federal Practice and Procedure § 1370 (3d ed.); *see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 588 n.4 (4th Cir. 2004)*

So when "the plaintiff moves for judgment on the pleadings, the motion should be granted if, on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *(see Walker v. Liberty Mut. Ins. Co., No. 4:16-CV-01388-RBH, 2017 WL 1020884, at \*1 (D.S.C. Mar. 16, 2017); see Smurfit-Stone Container Enterprises, Inc. v. Nat'l Interstate Ins. Co., No. 3:08CV093-HEH, 2008 WL 4153762, at \*4 (E.D. Va. Sept. 5, 2008)*

In the instant case, the Defendants by moving for judgment on pleadings impliedly accepts all the facts alleged by the Plaintiff and constitute an estoppel from denying. Applying the principle of estoppel, wherein a person is precluded from alleging facts that are contrary to his previous claims or actions, the Defendants are estopped from denying any of the facts or allegations made by the Plaintiff with regard to the Defendants in the adversary proceeding.

In other words, estoppel prevents someone from arguing something contrary to a claim made or act performed by that person previously. Conceptually,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

1  estoppel is meant to prevent people from being unjustly wronged by the
2  inconsistencies of another person's words or actions.

3  Thereby in the instant motion for judgment filed by the Defendant as a response to
4  the Adversary proceedings filed by the Plaintiff on November 27, 2017, the
5  Defendants affirm the claims and facts raised by the Plaintiff. The Plaintiff have
6  stated all instances of forgery, fraud, concealment by the Defendants with regard
7  to the DoT, and all violations of various rules with regard to further assignments
8  of the alleged DoT by the Defendants, thereby authorizing every single charge
9  made by the Plaintiff in the adversary proceeding. The Plaintiff has made all
10 allegations with sufficient proof of claims and facts against the Defendants
11 fraudulent and intentional concealments.

12  As stated in the Adversary proceeding, alleged deed of trust ("DOT")
13 purported to have entered securing a $390,000 promissory note was recorded
14 against the Real property located at 15814 Septo Street, North Hills, California
15 91343 indicating Ampro Mortgage, a division of United Finance Mortgage Corp
16 ("Alliance Bancorp, Inc") as the lender and MERS acting solely as a nominee for the
17 lender and the lender's successors and assigns was the beneficiary under deed of
18 trust. The trustor of the note and the March 15, 2007 DOT was deceased Isadore
19 Rosenberg.

20  The DOT has been further assigned by two false assignments and a
21 fraudulent correction assignment/ creating a situation of introducing false
22 documents into the stream of commerce; the first Assignment purports to have
23 been made on April 16, 2008 at 7:55 am (though not acknowledged until August
24 2008). The second assignment purports to have been made simultaneously with
25 the first assignment as of April 16, 2008 at 7:55 am although it is not
26 acknowledged until 2009 and recorded in 2010. The correction assignment of
27 March 21, 2017  has affixed Jon Dickerson, signing  on behalf of FDIC as the
28 Defendants allege however contested by the Plaintiff as to validity.  This is a false

document also introduced into the stream of Commerce as indicated by Exhibit 8 of the November 27, 2017 filed Adversary Proceeding. It is impossible to make a correction to a recorded real estate assignment going back 7 plus years! **CCP 337**

The Plaintiff realized that there existed such a DoT only after his death of his father, Isadore Rosenberg. During the lifetime of his father the Plaintiff was never informed of the existence of such a DoT. The Plaintiff realized that the signature in the alleged DoT were by all appearances forged by the care taker of his own father, David Curtis Harder. Almost immediately given the circumstances of dealing with a hostile caretaker house "take over" and ultimately requiring sheriff eviction, upon realizing the DOT was not executed by his father and suspected forgery on August 29, 2009 the plaintiff filed a petition in Los Angeles Superior Court pursuant to Section 850 of the Probate Code as estate personal representative. The DOT that was recorded is void ab initio as it was entered by forging the signature of his father, as mentioned above, thereby invalidating the two further assignments and one correction assignment as claimed by the Defendants.

The Defendants have by filing this Motion for judgment on pleadings admitted all these facts that were alleged by the Plaintiff in the adversary proceeding including the facts alleging forgery, fraud and concealment by the Defendants with regard to the DoT.

**B.**

**DEFENDANTS DO NOT EXPRESSLY DENY FRAUD COMMITTED**

Even if the alleged facts were considered not to be admitted by the Defendants on the filing of the Motion for judgment on pleadings, the very fact that the Defendants in the instant motion for Judgment have not denied such forging or fraudulent activities committed by them anywhere in the motion. The only claim by the Defendants is with regard to the time period within which the forgery and

Page 22
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

22

245

1  fraud committed should have been alleged and the specificity with regard to such
2  allegation of forgery and fraud.   This itself proves that the Defendants have
3  impliedly admitted to the facts and allegations of fraud alleged by the Plaintiff in
4  the Adversary proceeding.

5      Whereas,   the   Plaintiff    has   clear   and   unambiguous   report   of   the
6  handwriting Expert and further evidences to prove the forgery with regard to the
7  signature of Isadore Rosenberg in the alleged DoT.
8  Thus, by initiating the instant motion and non-denial of forgery and fraud
9  committed the Defendants hereby admit to all the forgery, fraud, concealment by
10  the Defendants with regard to the DoT and all violations of various rules with
11  regard to further assignments of the alleged DoT as raised by the Plaintiff, thus,
12  entitling Plaintiff for all the claims and reliefs sought in the adversary proceeding.

*(As indicated on the Cover Sheet for this Adversary Proceeding Plaintiff prays as damages
collectively  $390,000 via a global release and settlement from all parties).*

13      The opposition arguments set forth in their MJOP quoting directly from: at
14  page 4 / lines 7 to 12 are patently presented in an out of context false manner.

15      "The property is encumbered by more than $674,534 in liens [RJN Ex 10]"
16  is being presented to the Court **AS AN ASSUMPTIVE STATEMENT** subject to
17  being impeach and or debunked. Discovery will impeach the set forth amount of
18  $674,534.

19      Respectfully pointing out to the court yet another very serious  weakness in
20  the filed Motion for Judgment on the Pleadings: Attention is directed to Fed. R.
21  Bank. P 7012 (b) requires objecting to the entry of final orders or judgments by the
22  bankruptcy judge with certain time limits. The defendants raise this objection past
23  the required deadline set forth in this Rule. See Docket # 2 Main Case  Page 1 of 8
24  subtitle 6. (entered in Pacer: 11/29/17  11:06:53

    Judge Victoria S. Kaufman's Status Conference Instructions

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

23

1   Opposition was to file and serve not more than 14 days before the status

2   conference a memorandum of points and authorities and evidence in support of

3   position: i.e; within meaing of 28 U.S.C Section 157 (b)

    They have not complied with this requirement.

### III.

### INITIATION OF DISCOVERY PROCEEDING INVALIDATES
### THE MOTION FOR JUDGEMENT ON PLEADING

    In the instant case, the Defendants have filed for a motion for judgment on

pleadings in violation of Rule 12(c) of FRCP. The Motion for Judgment on Pleadings

is a motion made by a party, up to a point where trial is not delayed, claiming the

opposing party has insufficient evidence to reasonably support its case. Judgment

on the pleadings is a motion made after pleading and before discovery. Thus as per

Rule 12 (c) of FRCP the motion for judgment on pleadings can be initiated only for

deciding on a case without appreciating evidence. A motion for judgment on the

pleadings is essentially trials on the pleadings and is not admissible if the

discovery proceedings are initiated by either party.

    In the instant case, the Plaintiff has initiated the Discovery process. An

initial conference is one of the first steps of the discovery process in a civil case as

per Rule 26 of FRCP. Thereby, the Plaintiff has already started with the process of

discovery by requesting for the initiating conference.

    In the meanwhile, it is important to make note of, the Plaintiff is currently

in the process of seeking to add one or more parties (Law firm of Garrett & Tulley)

via required filed Motion (Fed.Rule Civ. Proc. 20) to the Adversary Proceeding and

for addressing this concealment concern adequately. Note: the Plaintiff has

experienced two postponements of the initial status conferences (Local Bankruptcy

Rule (LBR) 7016-1) concurrently with   the Defendant's now premature moving for

the motion for Judgment on pleadings. April 4, 2018 has been set by the

Honorable Court as the third continued date for conducting both the required LBR

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

24

7016-1 Initial Status Conference & the hearing on the present Motion for Judgment on the Pleadings on the same day.

This in itself is contradictory to Rule 12 (c) and Rule 26 of FRCP for motion for judgment and discovery process respectively.

This fast track calendaring of the MJOP is also in violation of Plaintiff's right to seek discovery; pertaining to their due process rights as it pertains to their PROPERTY (Residence of Debtor) as pursuant to **U. S. Const. art. XIV, § 1**. The Defendants on the other hand it is  contended are  concealing important material case facts absent discovery,   and yet have filed for the Motion for Judgment without adhering to the set rules and procedures.

## IV.

### U.S. Code › Title 11 › Chapter 3 › Subchapter III › § 341 MEETING IS MANDATORY FOR A BANKRUPTCY PROCEEDING

In the Motion for judgment on pleadings filed by the Defendants, they have alleged that the Bankruptcy Proceeding with respect to the Estate property was discharged by the Bankruptcy Court prior to the Adversary Proceeding. The Discharge of the Bankruptcy proceeding would invalidate the Adversary proceeding in itself is the argument of the Defendants.

However, 341 creditor meeting is a mandatory rule for bankruptcy proceeding prior to the issue of the "discharge" which was not complied in the instant case. The primary purpose of the section 341(a) meeting (the meeting of creditors), as in a chapter 7 case, is to provide the trustee and the creditors the opportunity to examine the debtor and determine whether there are any grounds for objecting to the plan.  Exhibit -3-  Pages 40 - 42.

The said meeting with the creditors is done prior to the discharge of the debtor in the bankruptcy case which was NOT adhered too, in the Plaintiff's case

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

25

and the Plaintiff was moreover "auto" discharged in the bankruptcy case prior to the completion of this mandatory Creditors Meeting rule.

Source: **U.S. Department of Justice, Executive Office for Chapter 7 Trustees, Effective October 1, 2012.** Handbook for Chapter 7 Trustees Page 3-4 Under: C. FINANCIAL DOCUMENTS.

*"Any continued or rescheduled meeting should be held before the time for objection to discharge has expired, unless the trustee has obtained an extension of time to object to the debtor's discharge. The debtor should not receive a discharge unless the debtor has been examined..."*

This in itself would render the present main bankruptcy case to have been discharged prematurely. Thus the said argument by the defendants in the Motion for Judgment On pleadings i.e.; post discharge violation, of the Adversary Proceeding filing is invalid.

## V.

### EVEN IF THE MOTION IS GRANTED, PLAINTIFF SHOULD BE ALLOWED LEAVE TO AMEND THE COMPLAINT TO CORRECT DEFICIENCIES

As noted earlier, even if a motion for judgment on the pleadings is granted, it is generally appropriate to do so while allowing the plaintiffs leave to amend their complaint. As per Rule 15(a)(2) of FRCP, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. Indeed, failure to grant leave to amend where amendment to correct the defects identified in the motion is possible is an abuse of discretion. *(Bettencourt v. Hennessy Industries, Inc. (2012) 205 Cal.App.4th 1103, 1106.)*

Here, none of Defendants' arguments identify the kind of irremediable flaw, that would justify denying leave to amend. Therefore, it is submitted by the Plaintiff that in the event the Court decides to grant Defendants' motion, the Honorable Court should, it is prayed, also in fairness grant the Plaintiff the leave to amend their complaint to correct any deficiencies identified in the court's ruling.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

26

1        In the alternative it is prayed the Court use their granted powers and refer

2    this matter, forthwith, to mediation under the Central District of California

3    Bankruptcy program. Plaintiff is confident that 4 hours of mediation will resolve

4    this conflict among the parties; - previous JAMS Court ordered Mediation back in

5    Summer of 2013 came very close in resulting of a meeting of the minds.

6

7

8

9

10

11

12

13

14                                **4.**

15                          **CONCLUSION**

16

17   For all the above reasons, Defendants' motion should be denied and the case

18   should move forward towards a trial on the merits of Plaintiffs' claims. Plaintiff

19   adamantly contends they are very likely to succeed on all or if not a part of set

20   forth claims.

21   Dated: 3/21/18

22

23                                          Respectfully submitted by,

24                                          _Steven Mark Rosenberg_
                                            Steven Mark Rosenberg.
25                                          Plaintiff
                                            In Pro Per
26

27

28

Page 27
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE OPPOSITION TO DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS
                                    27

250



28



29

HOWARD C. RILE, JR.

*Forensic Document Examiner*

AMERICAN SOCIETY OF
QUESTIONED DOCUMENT EXAMINERS

AMERICAN ACADEMY OF
FORENSIC SCIENCES

100 OCEANGATE, SUITE 870
LONG BEACH, CALIFORNIA 90802-4312
TEL: (562) 901-3376
FAX: (562) 901-3378
E-MAIL: HCRODE@AOL.COM

FORMERLY AFFILIATED WITH
HARRIS & HARRIS

DIPLOMATE, AMERICAN BOARD OF
FORENSIC DOCUMENT EXAMINERS

July 23, 2009

83098R

VIA PERSONAL DELIVERY

Steven Mark Rosenberg
15814 Septo Street
North Hills, CA  91343

SIGNATURE REPORT

Re:   Estate of Isadore Rosenberg

Dear Mr. Rosenberg:

Pursuant to your request, I have examined:

1.  Certified true copy of an Abandonment of Homestead dated March 5, 2007,
    recorded as Instrument Number 20070575005 in Los Angeles County on
    March 15, 2007;

2.  Certified true copy of a Grant Deed dated March 5, 2007, recorded as
    Instrument Number 20070575006 in Los Angeles County on March 15, 2007;

3.  Certified true copy of a Deed of Trust dated March 5, 2007, with an
    Adjustable Rate Balloon Rider also dated March 5, 2007, recorded as
    Instrument Number 20070575007 in Los Angeles County on March 15, 2007;

4.  Redacted photocopy of notary log entries corresponding to the above three
    documents for notary R. D. Salazar dated March 5, 2007;

5.  Photocopy of an Amended Escrow Instruction dated March 5, 2007.

Specifically in question on each of these documents is the purported signature of

Isadore Rosenberg.  Attached as Exhibits A and B are copies of the Abandonment of Homestead

Declaration Exhibit B

30

Steven Mark Rosenberg                    2                      July 23, 2009

and Grant Deed.  Attached as Exhibit C are copies of the first and signature pages of the Deed of

Trust and the signature page of the Adjustable Rate Rider.  Attached as Exhibit D is a copy of the

notary log pages.  Attached as Exhibit E is a copy of the Amended Escrow Instruction.

        Submitted and identified as bearing the acknowledged genuine signature of

Isadore Rosenberg were:

1.  Photocopy of California Driver License D0572742 dated May 20, 1978;

2.  California Driver License D0572742 dated May 3, 1990;

3.  Photocopy of a Health Insurance card dated May 1, 1983;

4.  Original report card dated January 29, 1960;

5.  Original of Isadore and Norma P. Rosenberg Trust dated May 4, 1990;

6.  Original Individual Grant Deed dated May 4, 1990, recorded as Instrument
    Number 90-847083 on May 8, 1990;

7.  NCR copy of Cemetary Purchase Agreement dated August 29, 1996;

8.  Original check number 4029 dated November 6, 1996;

9.  Machine copy of a Customer Account Transfer Form dated November 25,
    1999;

10. Copy of an Affidavit of Domicile notarized March 2, 2000;

11. Machine copy of a Third Party Trading Authorization dated May 8, 2000;

12. Two original checks, numbers 1332 and 1334, both dated April 5, 2001;

13. Original check number 2332 dated April 4, 2004;

14. Fax copy of a Statement of No Loss dated June 20, 2004;

15. Copy of a Conditions of Admission dated October 21, 2005;

31

Steven Mark Rosenberg                          3                            July 23, 2009

16.   Patient Authorization dated October 21, 2005;

17.   Fax copy of a Transfer/1035 Exchange dated March 4, 2007;

18.   Machine copies of four checks consisting of:

    a.   check number 1597 dated January 3, 2007

    b.   check number 1606 dated January 29, 2007;

    c.   check number 1644 dated March 15, 2007;

    d.   check number 1521 dated May 21, 2007.

Attached as Exhibit F are photocopies of the above described documents.

As a result of the examination and analysis, my observations are as follows:

1.   The evaluation of original signatures is a three-step procedure. The first step is to determine if the purported original ink signature is, in fact, a signature written by a human and not a machine reproduction. In the second step, the overall spontaneity or naturalness of the original disputed signature is evaluated. The purpose of this is to determine if one is dealing with handwriting as opposed to a tracing or a slowly written simulation. The third step involves the comparison of the overall execution and design of the questioned signature to a verified representative sampling of the individual's signature.

2.   There are intrinsic limits in the examination of copies rather than original documents. Copies are subject to manipulation that may not always be detectable. Additionally, subtle details that are of significance in evaluating signatures are obscured. The assumption is made in this report that the copies provided depict the physical evidence to be found on the original documents. While copies are not the best evidence, they can be of value if their limitations are recognized. Should the originals become available, I would reserve the right to review them prior to testimony.

3.   With respect to evaluating copied reproductions of signatures, if there are gross differences in terms of design and construction between the questioned and known signatures, that is generally not the fault of the copy process.

3-2

Steven Mark Rosenberg                    4                    July 23, 2009

Consequently, an opinion that the signature is either not genuine or probably not genuine would be justified. If, on the other hand, there is agreement in terms of execution and design, and no blatant evidence of tracing or manipulation, the document may be what it purports to be and the signature may be genuine. The possibility of a carefully executed manipulation or simulation cannot be precluded. The only way to reach a definite opinion that the signature and document is authentic is to examine the original of the document in question.

4.  All of the submitted questioned documents are copies. I cannot completely evaluate the execution of the signatures. I can evaluate the individual letter design and overall construction.

5.  Bearing the above limitations in mind, I intercompared all of the submitted exemplars for Isadore Rosenberg. Attached as Exhibit G is an enlarged composite photocopy showing four of the six questioned signatures. In terms of overall design and construction, the six questioned signatures are consistent with being the work of one writer.

6.  I intercompared all of the submitted exemplars for Isadore Rosenberg, which are dated from 1960 through 2007. His signature throughout the 47-year-time period covered by the exemplars remained remarkably consistent in terms of overall design and construction. Mr. Rosenberg's signature was a complicated design executed in a spontaneous manner. On most of his checks, Mr. Rosenberg used a contraction, "I Rosenberg." The most proximate exemplar to the March 5, 2007 date on all six of the questioned documents [Exhibits A through E] are the copies of the four checks dated from January 3 through May 21, 2007 and the Transfer/1035 Exchange (known signatures #17 and #18, Exhibit F). The Transfer/1035 Exchange is dated March 4, 2007, the day before the date on all six questioned signatures. Attached as Exhibit H is a composite photocopy showing a sampling of the submitted exemplars.

7.  I next intercompared all of the six questioned Isadore Rosenberg signatures to his submitted exemplars. Comparing the questioned to all of the submitted exemplars, I observed what I consider to be significant consistent differences between the questioned and known signatures. Among the features that I considered significant were the "sad" combination in "Isadore," the capital "R" in "Rosenberg," and the "osen" combination in "Rosenberg."

33

Steven Mark Rosenberg                          5                          July 23, 2009

8.   I next examined and compared the handwriting and signature in the jurats on
the Abandonment of Homestead, Grant Deed and Deed of Trust to the
certified true copy of the Surety Bond for notary R. D. Salazar dated January
28, 2004. Attached as Exhibit I is a copy of the certified copy of the Surety
Bond. The handprinted name and signature of R. D. Salazar on the three
jurats and the bond were in very close agreement.

## O.P.I.N.I.O.N

After due consideration, and bearing in mind the limitations imposed by the

examination of copies, my opinions are as follows:

1.   The purported signature of Isadore Rosenberg on the Abandonment of

Homestead, Grant Deed, Deed of Trust, Adjustable Rate Rider, notary log, and Amended Escrow

Instruction described and copies attached as Exhibits A through E, and the exemplars attributed

to him, were not written by the same individual. The differences observed in the questioned and

known signatures cannot reasonably be explained as caused by the copy process(es).

2.   The handprinting and signature of R. D. Salazar on the jurats for the

Abandonment of Homestead, Grant Deed, and Deed of Trust, and on the Surety Bond were very

probably written by the same individual.

All of the submitted materials are being returned with this report by personal

delivery.

Respectfully submitted,

Howard C. Rile, Jr.

HCR:nad

34

257

## DECLARATION OF HOWARD C. RILE, JR.

1

2    I, Howard C. Rile, Jr., having knowledge of the following facts, declare the same to be

3    true.

4    My qualifications as a forensic document examiner are set forth in the attached

5    resume, which is marked Exhibit A and incorporated herein by reference.

6    I was retained by Steven Mark Rosenberg to examine documents in connection with

7    the Estate of Isadore Rosenberg. A copy of my report, based upon said examination, is attached,

8    marked Exhibit B, and incorporated herein by reference.

9    I have first-hand knowledge of the matters stated above, and if called as a witness, I

10   could and would testify competently thereto under oath.  I declare under penalty of perjury under

11   the laws of the State of California that the foregoing is true and correct, and that I am signing this

12   declaration on July ____, 2009 at Long Beach, California.

13

14

15   Howard C. Rile, Jr.

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF HOWARD C. RILE, JR.

35

258

American Society of Questioned
Document Examiners

American Academy of
Forensic Sciences

# Howard C. Rile, Jr.
*Forensic Document Examiner*

100 Oceangate, Suite 670
Long Beach, CA  90802-4312
Tel: 562/901-3376  ♦  Fax: 562/901-3378
Website: www.asqde.org/rile.htm   Email: hcrqde@aol.com

Successor to Harris & Harris

Diplomate, American Board of
Forensic Document Examiners

## RÉSUMÉ

## HOWARD C. RILE, JR.
## FORENSIC DOCUMENT EXAMINER

I graduated from California State University at Los Angeles in 1968 with a Bachelor of Science degree in Chemistry. From 1968 to 1972, I worked as a chemist at the Jet Propulsion Laboratory in Pasadena, California. Since 1972, I have devoted full time to the study and examination of problems relating to disputed handwriting, signatures, typewriting, and identification of photocopiers, ink, and papers.

From 1972 to 1974, I was employed and trained at the firm of Harris and Harris, Examiners of Questioned Documents, at Los Angeles, California. Between 1974 and 1979, I was employed by the Los Angeles County Auditor-Controller as a document examiner; and from 1979 to 1983, I was the questioned document examiner for the State of Colorado at the Colorado Bureau of Investigation in Denver. Since 1983 I have been an independent, private examiner; I was affiliated with Harris and Harris until 1996.

I am certified by and past president (1997-1999) of the American Board of Forensic Document Examiners, Inc. I am also a member of and past president (2006-2008) of the American Society of Questioned Document Examiners, Inc. I am a member and ex-Membership/Credentials Chairman of the Southwestern Association of Forensic Document Examiners.  I am a member of the Canadian Society of Forensic Science; and the Document Section of the American Academy of Forensic Science, and the ASTM.  I revised a chapter on signatures in *Scientific Examination of Questioned Documents, 2nd Edition.*

I have qualified and testified as an expert witness in my specialty in more than 500 cases involving criminal and civil matters in federal and/or state courts in California, Arizona, Colorado, Nevada, Hawaii, Kansas, New York, and Wyoming.

Our office and laboratory are equipped with microscopes, cameras, a digital and photographic darkroom, ESDA, a Video Scanning Comparator (VSC-4), measuring devices, and other specialized instruments. We maintain a library and extensive reference files.

References and a listing of cases in which I have testified are available upon request.

Declaration Exhibit A

36



37



**NEWS RELEASE**

For Immediate Distribution

July 10, 2007

**United States Attorney's Office**

Central District of California

Thom Mrozek, Public Affairs Officer
(213) 894-6947
thom.mrozek@usdoj.gov
www.usdoj.gov/usao/cac

## FORMER USC REAL ESTATE PROFESSOR WHO BILKED STUDENTS, OTHERS OUT OF $1.5 MILLION IN REAL ESTATE INVESTMENT SCAM SENTENCED TO FEDERAL PRISON

An Orange County man who ran a real estate investment scam that lured victims with bogus claims of large returns on investments in commercial real estate developments was sentenced today to six years in federal prison.

Barry Landreth, 38, formerly of Coto de Caza and now of Fullerton, was sentenced this morning by United States District Judge Cormac J. Carney. A hearing has been set for August 20, 2007, to determine the amount of restitution owed by Landreth. Judge Carney ordered Landreth to surrender to custody by July 30, 2007.

At today's hearing, six victims addressed the Court, with one man, a former student of Landreth's at USC, saying that Landreth was a professor he trusted and went to for career advice. Several victims testified that the losses they incurred from the scheme have ruined them financially. At least one victim said he would have to work well beyond his planned retirement to recoup the money he lost to Landreth.

Landreth pleaded guilty in March to a federal wire fraud charge. By pleading guilty, Landreth, a former adjunct professor of real estate finance at the University of Southern California, admitted that he ran two schemes involving purported real estate development projects in Chicago and Las Vegas. Through his company,

-32-

Webster Realty Investors, Landreth offered short-term, high-yield real estate investments in two projects that he called Discovery Chicago LLC and Discovery Las Vegas LLC. Landreth induced victims, including wealthy investors and several USC students, to invest with promises that their money would be used in one of the two projects. In fact, Landreth did not use the victims' money for either project, but instead spent the money on business expenses for Webster Realty Investors and on personal expenses.

As part of the scheme, Landreth falsely represented to victims that the projects would provide 190 percent returns on investments within 30 days to 45 days.

In court documents, the government presented evidence that Landreth used victims' money to buy a Cadillac Escalade and several show jumping horses.

This case was investigated by the Federal Bureau of Investigation, which received assistance from the California Department of Corporations.

CONTACT:   Assistant United States Attorney Gregory Staples
(714) 338-3535

Release No. 07-090

39



40

Repeat-cacb, RepeatPACER, NoFeeRequired

## U.S. Bankruptcy Court
## Central District of California (San Fernando Valley)
### Bankruptcy Petition #: 1:17-bk-11748-VK

|  |  |
|---|---|
|  | Date filed: 06/30/2017 |
| Assigned to: Victoria S. Kaufman | Debtor discharged: 10/10/2017 |
| Chapter 7 | 341 meeting: 01/05/2018 |
| Voluntary | Deadline for objecting to 09/29/2017 |
| No asset | discharge: |
|  | Deadline for financial 09/29/2017 |
|  | mgmt. course: |

*Debtor disposition:* Standard Discharge

**Debtor**
**Steven Mark Rosenberg**
106 1/2 Judge John Aiso St #225
Los Angeles, CA 90012
LOS ANGELES-CA
SSN / ITIN: xxx-xx-7342

represented by **Charles Shamash**
Caceres & Shamash
LLP
8200 Wilshire Blvd Ste
400
Beverly Hills, CA 90211
310-205-3400
Fax : 310-878-8308
Email: cs@locs.com

**Trustee**
**Diane C Weil (TR)**
1900 Avenue of the Stars, 11th Floor
Los Angeles, CA 90067
(310) 277-0077
*TERMINATED: 09/18/2017*

**Trustee**
**Amy L Goldman (TR)**
633 W 5th Street, Suite 4000
Los Angeles, CA 90071
(213) 250-1800

*U.S. Trustee*
**United States Trustee (SV)**
915 Wilshire Blvd, Suite 1850

1 of 3                                    41                          03/02/2018 02:14 PM

**1:17-bk-11748-VK** Steven Mark Rosenberg
**Case type:** bk **Chapter:** 7 **Asset:** No **Vol:** v **Judge:** Victoria S. Kaufman
**Date filed:** 06/30/2017 **Date of last filing:** 01/05/2018
**Debtor discharged:** 10/10/2017

# Pending Statuses

| Status | Begin Date | Time in Status | # | Status Set By |
|---|---|---|---|---|
| Awaiting Closing | 10/10/2017 | 143 days | 21 | ● ORDER OF DISCHARGE – Chapter 7 (CACB AutoDischarge) (BNC) |
| Awaiting Discharge | 01/05/2018 | 56 days | | ● Chapter 7 Trustee's Report of No Distribution |

Click here to view terminated Statuses.

42

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2729 W. 78'65th : Inglewood, CA 90305

A true and correct copy of the foregoing document entitled (specify): Reply To Defendants (Ocwen Loan
Servicing & MERS)
_As To only:_ Memorandum of Points and Authorities Motion For Judgment
In Support of The opposition to Defendants mte for judgment on The Pleadings
will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) 3/21/18 _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

3/21/18             Canny Hudson                    [signature]
_Date_              _Printed Name_                   _Signature_

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    **F 9013-3.1.PROOF.SERVICE**

Case 1:17-ap-01096-VK

As To only:

Reply To Defendants (OCWEN LOAN Servicing &
Motion For Judicial Judgment MERS)
On The Pleadings

F 7016-1.1

| In re | CHAPTER: 7 |
| Steven MARK Rosenberg | CASE NO.: 1:17-bk-11748-VK |
| Debtor(s). | ADVERSARY NO.: 1:17-ap-01096 |

**ADDITIONAL SERVICE INFORMATION** (if needed):

HONORABLE Judge VICTORIA S. KAUFMAN
U.S. BANKruptcy Court – Central District
(SAN FerNAndo Valley)
21041 Burbank Blvd
Woodland Hills, CA 91367-6603

WRight, Finlay & ZAK, LLP
Attn: Attorneys T Robert Finlay & Nicole S Dunn
4665 MAC Arthur Court, Suite 200
Newport Beach, CA 92660

LAW Firm of Garrett & Tully
225 South Lake Avenue
Suite 100
PASAdena, CA
Attn: Robert Garrett

Boca Raton, Florida 33487

TRustee
Amy L Goldman, ESQ
633 W. 5th Street, St 4000
Los Angeles, CA 90071

Department of Justice
U.S. Trustee (SV)
915 Wilshire Blvd, St 1850
Los Angeles, CA
90017

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 7016-1.1

January 2009

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

**VIA U.S. MAIL**

Steven Mark Rosenberg
106-1/2 Judge John Aiso St., #225
Los Angeles, CA  90012

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 2, 2019.

/s/Linda C. Lozano
Linda C. Lozano
GARRETT & TULLY, P.C.
225 S. Lake Avenue, Ste 1400
Pasadena, CA 91101
Telephone:  (626) 577-9500
Facsimile:   (626) 577-0813
Email: zlin@garrett-tully.com