```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3          HONORABLE ANDREW J. GUILFORD, JUDGE PRESIDING

 4   IN RE:  STEVEN MARK ROSENBERG,     )
                                        )
 5                                      )
                                        )
 6                        Appellant,    )
                                        )
 7                                      )
                                        )
 8            Vs.                       )   No. SACV18-10188-AG
                                        )
 9                                      )
                                        )
10   ALLIANCE BANCORP., INC., ET AL.,   )
                                        )
11                                      )
                                        )
12                        Appellee.     )
                                        )
13   _____  )

14

15

16          REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                    MOTION HEARING

18                 SANTA ANA, CALIFORNIA

19               MONDAY, OCTOBER 7, 2019

20

21

22          MIRIAM V. BAIRD, CSR 11893, CCRA
         OFFICIAL U.S. DISTRICT COURT REPORTER
23         411 WEST FOURTH STREET, SUITE 1-053
              SANTA ANA, CALIFORNIA 92701
24                  MVB11893@aol.com

25
```

1                 **A P P E A R A N C E S**

2

3   **IN BEHALF OF THE APPELLANT,**    IN PRO SE
     **STEVEN MARK ROSENBERG:**

4

5

6

7

8   **IN BEHALF OF THE APPELLEE,**    NICOLE DUNN
     **ALLIANCE BANCORP., INC.,:**    WRIGHT FINLAY AND ZAK, LLP

9                                           4665 MAC ARTHUR COURT
                                          SUITE 280

10                                           NEWPORT BEACH, CA 92660
                                          - AND -

11                                           ZI LAO LIN
                                          GARRETT AND TULLY PC

12                                           225 SOUTH LAKE AVENUE
                                          SUITE 1400

13                                           PASADENA, CA 91101-4869

14

15

16

17

18

19

20

21

22

23

24

25

1           SANTA ANA, CALIFORNIA; MONDAY, OCTOBER 7, 2019; 11:12 A.M.

2                                  ---

3

4

5           THE CLERK:  Item 11, CV18-10188, In re:  Steven

6    Mark Rosenburg.

7           MR. ROSENBERG:  Good morning, Your Honor.  Steven

8    Mark Rosenberg plaintiff slash Appellant.

9           MS. DUNN:  Good morning, Your Honor.

10          Nicole Dunn on behalf of Ocwen Loan Servicing and

11   MERS.

12          MR. LIN:  Good morning, Your Honor.

13          Zi Lin on behalf of appellee Deutsche Bank.

14          THE COURT:  Good morning to you all.  Let's hear

15   from you, Rosenberg.  You received our tentative, I hope?

16          MR. ROSENBERG:  Yes, I did.

17          THE COURT:  Go ahead, please.

18          MR. ROSENBERG:  Just quick housekeeping.  I

19   certainly appreciate this opportunity for oral argument.  I

20   know not all appeal cases get to this point.  So it's at the

21   discretion of the judge --

22          THE COURT:  Yes.  I feel it's important.  So I'm

23   anxious to hear from you.

24          MR. ROSENBERG:  I appreciate that a lot.

25          Also, I know the statistics.  I quickly researched.

1    There's only like a 31 percent reversal from a tentative

2    basically.  There's no statistics that really parse that out

3    for pro per.  Bottom line, I really do have an uphill battle

4    here.  I'm going to do my best.  My dad was fond with quotes.

5    One is relevant.  If you find yourself in a hole, stop

6    digging.  That's attributed to Will Rogers.  So stop me if

7    you think I'm going down rabbit hole or anything.  Also, feel

8    free to interject with any questions seeking clarification or

9    any other part of that.

10           So getting right into this, I -- I may note where

11   this oral argument is really about pointing out hopefully to

12   the Court where there was a matter of fact or law was in --

13   in -- wrong.  So in that spirit -- I wasn't going to start

14   out with this, but it is important, I think.  In the second

15   paragraph there's a sentence.  This is somatic (verbatim) --

16   it's important I think for the theme of the case here.

17   Mr. Rosenberg alleges he discovered his father's caretaker

18   was --

19           THE COURT:  Let me stop you.  I don't see

20   Mr. Rosenberg in the second paragraph.

21           MR. ROSENBERG:  Okay.  In -- where it starts --

22   okay.  Third.  I'm sorry.  In 2008.  Despite that sentence

23   that starts in 2008.

24           THE COURT:  I'm not seeing that, sir.  What page is

25   that on?

1              MR. ROSENBERG:  Page 1 of 5 under background one.

2              THE COURT:  All right.  Just a moment.  Go ahead.

3              MR. ROSENBERG:  Mr. Rosenberg -- Mr. Rosenberg

4    alleges he discovered his father caretaker was the one who

5    authorized the subject loan.  Now, that authorized is real

6    heartburn for me for a couple reasons.  If you look up in

7    Black's Law dictionary it says, authorize signatory -- that's

8    the closest I could get to authorized definition -- a

9    representative with power to sign an agreement.  The criminal

10   caretaker at the time had no power of attorney.  Under

11   statute of frauds, there is nothing in writing for him to

12   attach his forged signature.  So I really take exception to

13   the word using authorized.

14              Just as a quick sidebar, I have made it essentially

15   my life's passion for elder abuse advocacy.  I have a website

16   called puttingeldersfirst.org.  I've attended five

17   conferences up in San Francisco.  It's all about undue

18   influence as a theme on this case.  Not authorized that the

19   caretaker signed anything.  So I'm checking that off.

20              Now we're getting to the just [sic] of law here.

21   I'm starting off -- it's a threshold issue, of course.

22   Standing.  The Court respectfully cites a case to make their

23   case that I don't have standing Green versus Central Mortgage

24   Company.  Westlaw 5157479.  The date of that hearing -- that

25   holding was September 4th, 2015.

1          Now, where I'm going to present hopefully some

2    persuasive arguments that I do have standing are going to be

3    essentially three or four cases and codes.

4          THE COURT:  Okay.  You know, when any advocate says

5    what you just did, it invites me to necessarily ask, how much

6    time are you going to need?

7          MR. ROSENBERG:  Oh, respectfully, only ten minutes

8    for my presentation.  I would like to reserve maybe three or

9    minutes for any rebuttal.

10          THE COURT:  Okay.  Go ahead.

11          MR. ROSENBERG:  Okay.  I'm going to quote in part

12    Federal Rule of Civil Procedure Rule 17.  Plaintiff and

13    defendant capacity.  The following may sue in your their own

14    names without joining the person for whose benefit the action

15    is brought.  Then in parens A, executor, I checked that box.

16    In parens B, administrator.  I checked that box.  In parens

17    G, a party authorized by statute, I checked that box as being

18    eligible under each of those scenarios under Federal Rule

19    of -- of Civil Procedure Rule 17.

20          There is records in the docket that no one should

21    be blindsided that I've made Rule 17 something I've had --

22    hanged my hat on to be here by way of standing.  That last

23    one is actually dove-tail parens G, a party authorized by

24    statute.  The statute essentially here is Civil Code 292017

25    Chapter 838.

1        Now, what's interesting here is that came into

2    effect in September of 2016, the case -- the case that the --

3    the Court respectfully cites Green versus Central Mortgage

4    Company was ruled on September 4th, 2015.  So in the interim,

5    this really, really is a public policy code that went into

6    effect.  I urge the Court to relook at Civil Code 2920.7 so

7    that -- I've now made two references as to why I should have

8    standing.

9        Now, the third one, we're going to take it up a

10   notch.  I don't mean to sound facetious here.  I respect the

11   procedure here.  Stares decision [sic] Supreme Court.  This

12   is the most highest we know in the land.  Stern versus

13   Marshall.  131 Supreme Court, 2594, 564 U.S. 462, 18.  That

14   might ring a bell to some people here.  The plaintiff in that

15   case was also known by the name of Anna Nicole Smith

16   Marshall.  The holding in that Supreme Court case was that in

17   bankrupctcy, there essentially two deviations where a party

18   can have standing.  What is under inheritance, scenario which

19   I'm fighting for my life for literally.  Also, under a

20   divorce decree scenario.

21       In a divorce decree, we saw it play out with the

22   L.A. Dodgers.  I know, we're in Angels town --

23       THE COURT:  No, we are not.

24       MR. ROSENBERG:  Doug McCormick [sic] the owner of

25   the Dodgers bypassed his divorce proceedings, got into a

```
 1    Chapter 11 bankruptcy, and the disposition of the Dodgers
 2    happened there.  Under this case Stern versus Marshall, the
 3    Supreme Court case, it was an inheritance.  It was also under
 4    the auspices that is also a way for standing in bankruptcy
 5    cases.  I check that box.
 6            Now, if the Court rules that I had don't have
 7    standing, this is going to be an interesting scenario.  I've
 8    seen the colleague of Deutsche Bank here.  I've reviewed over
 9    12 of his cases.  Post-bankruptcy and without exception, they
10    go with a doctrine called --
11            THE COURT:  Excuse me one moment.
12            MR. ROSENBERG:  Yes.
13            THE COURT:  Please don't bang on the podium.  It
14    makes it hard for us to record what you're --
15            MR. ROSENBERG:  I remember Khrushchev banging his
16    shoe at the U.N.  I saw that in elementary -- so I digress.
17            THE COURT:  No one will get buried here.
18            MR. ROSENBERG:  The colleague for attorney for
19    Deutsche Bank, in post-bankruptcies they shut down case after
20    case under what is called the in rem doctrine where already
21    the person has had their day in court in bankruptcy so no
22    more open doors of court.  If the Court rules that I don't
23    have standing, they won't be able to play that card.  I hope
24    counsel makes note of that.  So I really am in a win/win
25    whichever way you rule on the standing.
```

```
 1              Now, I am moving to -- oh, also [unintelligible] is
 2    cited.  It's a landmark case.  I was physically at the oral
 3    argument for that Supreme Court.  They held it here in L.A.
 4    One of the takeaways I got from that was one of Justices in
 5    their holding, we don't really want a line of strangers to
 6    the transaction, and essentially that was a good public
 7    policy.
 8              Now, I am going to acquisition [sic] and
 9    acknowledge the landscape of the Yvanova decision on page 3
10    on the upper paragraph.  It is still being defined.  There's
11    still cases coming out.  I acknowledge the current landscape
12    says a party, quote, unquote, borrower, if you will is --
13    is -- pre-foreclosure cannot challenge securitization of the
14    property.
15              Now, that's case law.  Okay.  But, again, what is
16    trumping -- what is going above case law again, the legal
17    pyramid kind of -- 101, if you will, but legal pyramid here,
18    Constitution, statutes, administrative regulations, court
19    opinions, case law.
20              So above Yvanova is the Homeowner's Bill of Rights.
21    Specifically the homeowner's Bill of Rights that is in play
22    here or has relevance here --
23              THE COURT:  I'm familiar with the Homeowner's Bill
24    of Rights.
25              MR. ROSENBERG:  292 --
```

```
1              THE COURT:  I'm familiar --
2              MR. ROSENBERG:  That says it needs to be an
3    accurate assignment or anything in the chain of records.
4              So I seen so many cases now that the Homeowner's
5    rights is -- is literally -- I'm kind of baffled because of
6    the hierarchy I just read.  Everybody is going to Saterbak
7    and other decisions.  They're not looking at the Homeowner's
8    Bill of Rights really as the higher plane.
9              This is part of this fact pattern.  I was -- couple
10   days ago, I turned 65.  I'm at a crossroads where to go.  I'm
11   really -- thinking this should be a cause celebre.  If the
12   Court says no, there's no standing for the Homeowner's Bill
13   of Rights and the securitization, I'm going let the
14   securitization go.  I'm going to fight -- fight hard for the
15   Homeowner's Bill of Rights.
16             THE COURT:  Sir, whether you fight or fight hard,
17   doesn't affect my challenge to determine the appropriate law.
18   So good luck on all your fights.  I need to look at the law
19   in this case.  Go ahead.
20             MR. ROSENBERG:  I understand.  I -- I backtrack in
21   this put that last statement in context.  Other -- other
22   legal mechanisms I would avail myself of.  Not -- I would
23   respect whatever the Court ultimately rules --
24             THE COURT:  Or don't respect.  Appeal me.  That
25   doesn't affect my decision here.  I need to decide what the
```

```
1    law is here.
2              MR. ROSENBERG:  I understand.  We're on the same --
3    we are literally on the same page.  I'm trying to offer my
4    own insights into the what the law is.
5              And the other parts about the statute of
6    limitations, I really take issue that in this case there
7    was ex --
8              THE COURT:  I didn't understand.  You said there
9    was extremely --
10             MR. ROSENBERG:  Extrenuate [sic].
11             THE COURT:  Hold on.  Let's not talk over each
12   other.  I believe you meant to say there were extenuating
13   circumstances?  Is that what you meant to say?
14             MR. ROSENBERG:  Actually --
15             THE COURT:  That wasn't what you meant to say.
16   Okay.  It's unclear what has just been said.  I tried to make
17   it clear.  Go ahead.
18             MR. ROSENBERG:  Okay.  Actually, I read the
19   sentence and -- it -- I stand corrected.  Rosenberg has not
20   established extraordinary circumstances.  So extraordinary is
21   the word.  Not extrenuating --
22             THE COURT:  I don't believe extrenuating is a word.
23   It's close enough to extenuating --
24             MR. ROSENBERG:  Extra --
25             THE COURT:  Let's not talk over each other, please.
```

 1    I don't mean to be difficult.  Let's just carry on.  I am

 2    trying to make the record clear for you.  The word is

 3    extenuating.  I don't mean to correct you or anything.  I

 4    want the record to be right.  Now we switched from

 5    extenuating or extrenuating to extraordinary.

 6              MR. ROSENBERG:  The last comment on the statute of

 7    limitations.  My counter to that.  I looked up the case

 8    Schramm versus JP Morgan, which is relied on to say that

 9    there's no tolling under a deed of trust.  That was a -- that

10    was a class action certification action.  So I really have

11    some -- I have some heartburn it wasn't a true fact pattern

12    apple and oranges situation under the statute of limitations.

13              I'm coming to the home stretch.  My last point.  I

14    could have saved it at the end here.  I think in the interest

15    of continuity, and I'll give the opportunity for the other

16    side probably to retort.  It's the matter of cost in this

17    action of the appeal.  Let's look at where we're at

18    essentially.  Ocwen right now -- I appreciate the Court's

19    addressing my filed Rule 25.  It's really unfortunate that I

20    had to be proactive to do that.  I'm -- I'm so concerned

21    right now --

22              THE COURT:  Please.  Just --

23              MR. ROSENBERG:  Okay.

24              THE COURT:  Hold on.  Just give me your argument.

25              MR. ROSENBERG:  For cost --

1    THE COURT:  I'm not sure -- are costs in front of

2  me right now?

3    MR. ROSENBERG:  Costs were in their reply appeals.

4  It wasn't addressed in the holding.  This is my only bite at

5  the apple to be proactive on cost.

6    THE COURT:  Go ahead.

7    MR. ROSENBERG:  Ocwen has been terminated.  They

8  asked for costs in their appeal.  So I don't see how they

9  could get cost now when they're terminated entity per the

10  secretary of state filing of August 29, 2019.  Deutsche did

11  not ask for costs in their appeal reply.  That leaves MERS.

12  MERS wants costs.  I don't mean to sound facetious here.  I

13  say bring it on.  I have a lot to challenge to them by way of

14  standing, a lot of moving parts.  There's a lot of

15  interesting court cases on MERS and their standing.

16    THE COURT:  I don't believe that's in front of me

17  right now.  Go ahead.

18    MR. ROSENBERG:  So the final note on cost is

19  essentially we understand it's the American rule of law.

20  Each party --

21    THE COURT:  The American rule of law goes to

22  attorney fees not costs.

23    MR. ROSENBERG:  Correct.

24    So -- so the cost here, I don't think, should be

25  factored in if the Court goes ahead with its tentative ruling

```
 1    as it is, and just indicate the one party MERS to receive the
 2    cost now as they've asked.  Again, the holding is silent, and
 3    I wanted to be proactive for everyone to be aware of that.
 4              THE COURT:  Okay.  Let's hear from the defense
 5    then.
 6              MR. ROSENBERG:  Thank you for your time.
 7              THE COURT:  Thank you.
 8              First, Counsel --
 9              MR. LIN:  Zi Lin --
10              THE COURT:  First, Counsel, could you start with a
11    general review of what has gotten us here today.
12              MR. LIN:  Well, Your Honor, in 2009, plaintiff
13    filed a probate action trying to avoid the subject deed of
14    trust.  In the year 2015, plaintiff was facing a trial.  He
15    was not comfortable with.  He asked the state court to
16    dismiss that probate action, and the Court dismissed it with
17    prejudice.  The plaintiff appealed to the State Court of
18    Appeal, and the State Court of Appeal were versed at that
19    dismissal with prejudice, and made it without prejudice.  In
20    2017, plaintiff filed a bankruptcy petition and then filed an
21    adversary proceeding, which is the current case that we're
22    here for after he received his discharge.
23              He sues under his individual capacity.  He doesn't
24    sue as an administrator.  He doesn't sue as an executor.
25              THE COURT:  That's the pending case or the case
```

```
1    before the bankruptcy?
2           MR. LIN:  This is the pending case I'm
3    describing --
4           THE COURT:  Which is --
5           MR. LIN:  Which is on appeal right now.
6           THE COURT:  Well, the pending case is an appeal of
7    the bankruptcy case.
8           MR. LIN:  That is correct, yes.
9           THE COURT:  All right.  Tell me what at bottom is
10   at stake?  I want to make sure we've got the basics down
11   here.
12          MR. LIN:  At bottom, the plaintiff is trying to
13   avoid the subject deed of trust.
14          THE COURT:  What is the present status of the
15   property?
16          MR. LIN:  I don't have -- I don't have that
17   information before me right now.
18          THE COURT:  Do you know who is occupying the
19   property?
20          MR. LIN:  Not right now, Your Honor.
21          THE COURT:  Do you know when a payment was last
22   made on the property?
23          MR. LIN:  I don't, but my counsel who represents
24   the servicer might.
25          THE COURT:  Bring a microphone closer to you.
```

1    MS. DUNN:  Yes, Your Honor.  I do not know when the
2  last payment was made on this loan.
3    THE COURT:  Mr. Rosenberg, would you know when the
4  last payment was made on the loan that is secured by the
5  property?
6    MR. ROSENBERG:  Your Honor, because of ratification
7  issues, had a payment been made, I would have been approving
8  of outright forgery on the deed of trust --
9    THE COURT:  Do you realize --
10    MR. ROSENBERG:  Payment has not been made, and I'm
11  not bragging or anything, since 2000 approximately, when my
12  dad died -- my 88-and-a-half-year-old dad at the time, by the
13  way, getting a $390,000 loan not reasonable and prudent.
14    THE COURT:  Let me say, folks.  I asked a very
15  simple question.  I am sorry you have lost your father.  I'm
16  sorry defense counsel doesn't know this answer.  It's a
17  simple question.
18    MR. ROSENBERG:  The --
19    THE COURT:  When was payment last made?
20    MR. ROSENBERG:  Payment was not -- has not been
21  made due to not having --
22    THE COURT:  I don't care due to what.  The question
23  is, when was payment last made?
24    MR. ROSENBERG:  Many offers to settle this have
25  been made.

```
 1                 THE COURT:  It's so interesting.  I'm sorry, sir.
 2                 MR. ROSENBERG:  2007.
 3                 THE COURT:  Thank you.  Now, may I ask, who is
 4       still living in the property, if anyone?  Can anyone answer
 5       that for me?  It's a simple question.
 6                 MR. ROSENBERG:  Your Honor, right now, I live in
 7       the property.  It's an albatross around my neck, because I
 8       live on a fixed income.  Utility bills are $350 a month.
 9                 THE COURT:  Let me stop you there.  Who is paying
10       the utility bills?
11                 MR. ROSENBERG:  I am.
12                 THE COURT:  Who is paying the taxes?
13                 MR. ROSENBERG:  I am.
14                 THE COURT:  And who is paying the insurance?
15                 MR. ROSENBERG:  I am.
16                 THE COURT:  Okay.  So you are living in the
17       property.  You've lived in it since you lost your father or
18       at least since 2007?
19                 MR. ROSENBERG:  Not happily because the
20       caretaker --
21                 THE COURT:  You know, I have to say, your
22       credibility arises -- it goes up when my questions just get
23       answered.  Do you know that I have now asked maybe three or
24       four questions, and all I get is a bunch of stuff about
25       people passing away and albatross.  I don't get answers.  It
```

```
 1    makes me think I have to say that maybe you don't want me to
 2    know the answer when I ask a question, I hear about albatross
 3    and all of that sort of thing.  I am just trying to get the
 4    answers down.  So anything else on that?
 5              MR. ROSENBERG:  No.
 6              THE COURT:  Okay.  One last thing.  What is the
 7    property worth, sir?  Anybody?
 8              MR. ROSENBERG:  Homes in the neighborhood, because
 9    of the local rule realtor, I need to give you that back
10    story.  It is not like I'm pulling something out arbitrarily.
11    I get mailings of what your home is worth or your recent
12    sales or comps.  One arrived in the mail last week.  Look, I
13    was an appraiser with the LAX --
14              THE COURT:  Here we go again.  I'm learning about
15    your appraiser.  I'm learning about things you get in the
16    mail.  It's a simple question.
17              MR. ROSENBERG:  The price of the house just
18    increased 50,000 like that in the last two months --
19              THE COURT:  You're unable to tell me what the home
20    is worth?
21              MR. ROSENBERG:  No.
22              THE COURT:  You don't know what the home is worth?
23              MR. ROSENBERG:  No.
24              THE COURT:  What is the amount of the loan against
25    the home?
```

```
 1                  MR. ROSENBERG:  The original amount --

 2                  THE COURT:  No.  What is the amount of the loan

 3      right now?

 4                  MR. ROSENBERG:  I don't know.

 5                  THE COURT:  What was the original amount?

 6                  MR. ROSENBERG:  390,000.

 7                  THE COURT:  Has that gone up or down?

 8                  MR. ROSENBERG:  Up.

 9                  THE COURT:  Is anyone able to tell me what the home

10      is worth?

11                  MR. LIN:  Your Honor, I could look at Zillo right

12      now, but I couldn't tell you right now.

13                  THE COURT:  I mean, it's just so interesting.  I

14      guess these things are not relevant to the parties.  It is

15      interesting to me that Mr. Rosenberg has been in a home

16      probably worth at least $400,000 since 2007 and has not made

17      any payments on the loan.  Is that correct?

18                  MR. LIN:  That is correct due to the litigation,

19      yes.

20                  THE COURT:  Do you agree over here?

21                  MS. DUNN:  Yes, Your Honor.

22                  THE COURT:  Do you agree, sir?

23                  MR. ROSENBERG:  Yes, Your Honor.

24                  THE COURT:  Okay.  Go ahead.

25                  MR. LIN:  I just want to address a few issues
```

1    regarding standing and statute of limitations.

2            Plaintiff stated that he has standing under Civil

3    Code Section 2920.7.  That statute is not -- was not

4    effective until January of this year, January 2019.  This is

5    ten years after he filed his original probate action.  He's

6    barred by statute of limitations.  He cannot invoke

7    Section 2920.7.

8            THE COURT:  Okay.  Go ahead.

9            MR. LIN:  Furthermore, plaintiff talks about the

10   statute of limitations.  There is a case that we've cited in

11   our brief at page 48.  It's the Bacon case.  We would believe

12   that case is on point.  That's a case where the Ninth Circuit

13   found that the statute of limitations was not equitably

14   tolled where the plaintiff forum shopped when he decided he

15   could not go forward with a state court trial.  That's --

16   that's at 843 F.2nd 372.

17           In this case, the plaintiff was incarcerated.  His

18   attorney tried to procure him for trial and was unsuccessful.

19   The state court pushed the plaintiff to move forward with

20   trial, and his counsel resorted to filing a federal lawsuit

21   and then dismissing the state court action.  We think that is

22   very similar to the facts of this case.  It stands for the

23   proposition that where you're forum shopping, you cannot

24   invoke the doctrine of equitable tolling.

25           With that, I will rest unless the Court has any

```
1    questions.
2              THE COURT:  Does anyone else have anything else
3    they wish to say?  Mr. Rosenberg?  Anybody?
4              MR. ROSENBERG:  I have in front of me -- I'm
5    definitely not going to cross the well.  If you want to se
6    it.  I have the official printout from the California State
7    Legislature on Senate Bill 115 that became codified 2017.  It
8    was --
9              THE COURT:  Hold on.  Hold on.  Relax.  Just relax
10   for a second.  Tell me how this will help me?
11             MR. ROSENBERG:  The other side just said it wasn't
12   effective until last year.
13             THE COURT:  You're going to the effective date of
14   that statute then?
15             MR. ROSENBERG:  Yes.
16             THE COURT:  Go ahead.
17             MR. ROSENBERG:  September 29, 2016.  Interesting
18   for me to read this morning it actually sunsets in just three
19   more months.  It was very controversial for it to pass.  It
20   was effective despite what the counsel just said
21   September 29, 2016 per the California Legislature printout of
22   the bill.
23             THE COURT:  Anything else?  Mr. Rosenberg?
24             MR. ROSENBERG:  Thank you for your time,
25   Your Honor.
```

1          THE COURT:  Thank you.  What about that concerning

2     the effective date since you said it was not retroactive, and

3     yet he cited a date years ago in 2016?

4          MR. LIN:  Your Honor, I think there's a mistake.

5     It was enacted in 2016.  It's effective 2019.  I'm looking at

6     the Westlaw printout for it.

7          THE COURT:  Okay.  So, Mr. Rosenberg, he is saying

8     the effective date of the statute was before it was enacted.

9     I assume then you are arguing it is not retroactive before

10    its effective date; correct?

11         MR. LIN:  No, it's not.

12         THE COURT:  I think the answer is, correct, it's

13    not.  Go ahead.

14         MR. LIN:  Yeah.  It's not -- it's not retroactive.

15    It was enacted 2016.  It's not effective until January of

16    this year.  We're way beyond the statute of limitations

17    anyway.

18         THE COURT:  Yes.

19         MR. ROSENBERG:  That's patently false.  I followed

20    the Court -- I followed the legislative history of this.  It

21    became effective on -- on the 1st of January 2017.

22         THE COURT:  Okay.  But when you say effective, sir,

23    a legislation can be effective that day, but the terms of it

24    start at a later date.  In other words, I could pass a piece

25    of legislation that would be effective today, but it would be

1    operative in 2021.  I think that's what the defense saying.

2    I don't know that's a -- did you say a patent lie?

3          MR. ROSENBERG:  Patent lie, because it was a lot of

4    celebration on social media when this passed.  It clearly

5    said it's going into effect -- this is -- it now sunsets in

6    one year.  Would it be prudent for the legislature to conduct

7    over six months of hearing both and just for a piece of

8    legislation that would be good for one year.

9          THE COURT:  That's called a pilot program.  It

10   happens.

11         MR. ROSENBERG:  Why would they -- the social policy

12   was of urgency at the time for this to be widows and heirs

13   were being -- to be down to earth explanation, kicked to the

14   curb, if you will.  It was urgency for this protection to go

15   into effect right away not for it to -- to cool off for a

16   couple years.

17         THE COURT:  When do you say its effective date was?

18   The moment it was passed or --

19         MR. ROSENBERG:  January --

20         THE COURT:  Hold on.  One at a time.

21         Sometimes when you pass legislation, you make the

22   effective date a date in the future.  You're saying the

23   effective date was the date it was passed.

24         MR. ROSENBERG:  No.  January 1st, 2017.

25         MR. LIN:  Your Honor, if I may clarify.

```
1              THE COURT:  Yes.
2              MR. LIN:  I'm looking at the credits on the Westlaw
3    printout.  It was added by statute 2016.  Effective
4    January 1st, 2017.  Amended by statute 2018.  And that --
5    then effective 2019.  So it -- it doesn't really matter if
6    it's 2017 or 2019.  It is still barred by the statute of
7    limitations because the plaintiff had notice of the purported
8    fraud in 2009.
9              THE COURT:  All right.  I've tried to give everyone
10   as much chance to talk as they wish.  I'm going to take the
11   matter under submission and issue an order very shortly.
12   Thank you all.
13             MS. DUNN:  Thank you, Your Honor.
14             MR. LIN:  Thank you, Your Honor.
15             MR. ROSENBERG:  Thank you, Your Honor.
16             (Proceedings concluded at 11:42 a.m.)
17
18
19
20
21
22
23
24
25
```

```
 1                            CERTIFICATE

 2     I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

 3     TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

 4     THE ABOVE MATTER.

 5     FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

 6     REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

 7     REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

 8

 9     /s/ Miriam V. Baird           11/26/2019

10     MIRIAM V. BAIRD                        DATE
       OFFICIAL REPORTER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```